# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Wire Harness | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | Case No. 2:12-cv-00203 |
| In Re: Heater Control Panels | Case No. 2:12-cv-00403 |
| In Re: Bearings | Case No. 2:12-cv-00503 |
| In Re: Anti-Vibrational Rubber Parts | Case No. 2:13-cv-00803 |
| In Re: Windshield Wipers | Case No. 2:13-cv-00903 |
| In Re: Radiators | Case No. 2:13-cv-01003 |
| In Re: Starters | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | Case No. 2:13-cv-01203 |
| In Re: Ignition Coils | Case No. 2:13-cv-01403 |
| In Re: HID Ballasts | Case No. 2:13-cv-01703 |
| In Re: Electronic Powered Steering Assemblies | Case No. 2:13-cv-01903 |
| In Re: Fan Motors | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | Case No. 2:13-cv-02403 |
| In Re: Air Conditioning Systems | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | Case No. 2:13-cv-02803 |
| In Re: Constant Velocity Joint Boot Products | Case No. 2:14-cv-02903 |
| In Re: Spark Plugs | Case No. 2:15-cv-03003 |
| In Re: Shock Absorbers | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | Case No. 2:16-cv-03803 |
| In Re: Automotive Steel Tubes | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | Case No. 2:16-cv-04103 |
| In Re: Door Latches | Case No. 2:17-cv-11637 |
| THIS DOCUMENT RELATES TO:<br><br>END-PAYOR ACTIONS | Oral Argument Requested |

## DEFENDANTS' MOTION TO DENY GEICO'S EXCLUSION REQUEST AS INVALID AND INEFFECTIVE AND TO ENFORCE LITIGATION STAYS

The undersigned Defendants[1] object to the validity of the GEICO Corporation and certain of its expressly named affiliates' (collectively, "GEICO") request to be excluded from the Round 3 End-Payor Plaintiffs' ("EPPs") Class Settlements ("Round 3 Settlements").  Further, Defendants object to GEICO's effort to treat its own exclusion request as effectuating the exclusion of large numbers of other unidentified Class Members without authorization to exercise the due process rights of those other Class Members and without GEICO giving them notice that GEICO was attempting to exclude them from the Settlement Classes.

Defendants request that the Court issue an order declaring that:

---

[1] Defendants are: Aisan Industry Co., Ltd.; Aisan Corporation of America; Franklin Precision Industry, Inc.; Hyundam Industrial Co., Ltd.; ALPHA Corporation; Alpha Technology Corporation; Alps Electric Co., Ltd.; Alps Electric (North America), Inc.; Alps Automotive, Inc.; Robert Bosch GmbH; Robert Bosch LLC; Bridgestone Corporation; Bridgestone APM Company; Calsonic Kansei Corporation; CalsonicKansei North America, Inc.; Chiyoda Manufacturing Corporation; Chiyoda USA Corporation; Continental Automotive Systems, Inc.; Continental Automotive Electronics, LLC; Continental Automotive Korea Ltd.; Diamond Electric Mfg. Co., Ltd.; Diamond Electric Mfg. Corp.; Eberspächer Exhaust Technology GmbH & Co. KG; Eberspächer North America, Inc.; MAHLE Behr GmbH & Co. KG; MAHLE Behr USA Inc.; Faurecia Abgastechnik GmbH; Faurecia Systèmes d'Échappement; Faurecia Emissions Control Technologies, USA, LLC; Faurecia Emissions Control Systems, N.A., LLC; Hitachi Automotive Systems, Ltd.; Hitachi Metals, Ltd.; Hitachi Cable America Inc.; Hitachi Metals America, Ltd.; INOAC Corporation; INOAC Group North America, LLC; INOAC USA Inc.; JTEKT Corporation; JTEKT Automotive North America, Inc.; JTEKT North America Corp., formerly d/b/a Koyo Corporation of U.S.A.; Kiekert AG; Kiekert USA Inc.; Koito Manufacturing Co., Ltd.; North American Lighting, Inc.; MITSUBA Corporation; American Mitsuba Corporation; Nachi-Fujikoshi Corp.; Nachi America Inc.; NGK Insulators, Ltd.; NGK Automotive Ceramics USA, Inc.; NGK Spark Plug Co., Ltd.; NGK Spark Plugs (U.S.A.), Inc.; Nishikawa Rubber Co. Ltd.; Sanden Automotive Components Corp.; Sanden Automotive Climate Systems Corp.; Sanden International (USA), Inc.; SKF USA Inc.; Stanley Electric Co., Ltd.; Stanley Electric U.S. Co., Inc.; and II Stanley Co., Inc.; Tenneco Inc.; Tenneco Automotive Operating Co., Inc.; Tenneco GmbH; Toyo Tire & Rubber Co., Ltd.; Toyo Automotive Parts (USA), Inc.; Toyo Tire North America OE Sales LLC; Usui Kokusai Sangyo Kaisha, Ltd.; Usui International Corporation; Valeo S.A.; Yamada Manufacturing Co., Ltd.; Yamada North America, Inc.; Yamashita Rubber Co., Ltd.; and YUSA Corporation (collectively, "Defendants" or "Round 3 Defendants").  All capitalized terms have the same meaning as used in the Settlement Agreements, unless otherwise stated here or in the accompanying brief.

(a) GEICO's effort to opt out other Class Members is not valid or effective and those Class Members – and claims based on, related to, or arising out of their purchases – remain in each Class and are bound by each Settlement Agreement;

(b) GEICO's request to exclude itself and certain of its affiliates is invalid and GEICO and its affiliates remain in each Class and are bound by each Settlement Agreement with respect to GEICO's own purchases of new vehicles or replacement parts in accordance with each Class Definition; and

(c) GEICO's continued prosecution of its recently filed complaint against the Round 3 Defendants is contrary to the litigation stays ordered in the Court's Preliminary Approval Orders and GEICO should not continue to prosecute its complaint in *GEICO, et al. v. Aisan Indus. Co., Ltd., et al.*, No. 2:18-cv-12210-JEL-MKM (E.D. Mich.), until this Court has ruled on the validity and effect of GEICO's putative opt out.

Pursuant to E.D. Mich. L. Rule 7.1(a), between July 30 and August 2, 2018, attorneys for Defendants sought to explain the nature of this motion or request and its legal basis and seek concurrence from GEICO in the relief sought herein.  Despite these reasonable efforts, Defendants were unable to conduct a Rule 7.1(a) conference with GEICO because GEICO refused to meet and confer.  *See* Ltr. from D. Hazel to M. Rubin, Aug. 2, 2018 (Ex. C).

Attorneys for Defendants have conferred with Settlement Class Counsel and understand that Settlement Class Counsel will submit their own filing stating their positions on behalf of the End-Payor Plaintiffs.

In support of their motion, Defendants rely on their brief of support and exhibits thereto.

3

Dated:  August 13, 2018                    Respectfully Submitted,

   */s/ Maureen T. Taylor*
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY & TURCO
PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com
       *And*


   */s/ Anita F. Stork (w/consent)*
Anita F. Stork
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA, 94102
Tel: 415-591-6000
Fax: 415-955-6091
Email: astork@cov.com

*Counsel for Alps Electric Co., Ltd.; Alps Electric
(North America), Inc.; and Alps Automotive, Inc.*


   */s/ Michael A. Rubin (w/consent)*
James L. Cooper
Michael A. Rubin
Adam Pergament
Matthew Oster
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
james.cooper@arnoldporter.com
michael.rubin@arnoldpoerter.com
adam.pergament@arnoldporter.com
matthew.oster@arnoldporter.com

Fred K. Herrmann (P49519)
Joanne G. Swanson (33594)
**KERR, RUSSELL AND WEBER, PLC**

4

500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Yamashita Rubber Co., Ltd. and YUSA Corporation*

 /s/ *Barry A. Pupkin (w/consent)*
Barry A. Pupkin
Jeremy W. Dutra
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Barry.Pupkin@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Defendants Aisan Industry Co., Ltd., Aisan Corporation of America, Franklin Precision Industry, Inc., and Hyundam Industrial Co., Ltd.*

 /s/ *George A. Nicoud III (w/consent)*
George A. Nicoud III
Joshua D. Dick
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission St., Ste. 3000
San Francisco, CA 94105
Tel: (415) 393-8200
Fax: (415) 374-8451
TNicoud@gibsondunn.com
JDick@gibsondunn.com

*Counsel for ALPHA Corporation and Alpha Technology Corporation*

 /s/ *John Roberti (w/consent)*
John Roberti
**ALLEN & OVERY LLP**
5

1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

*Counsel for Defendants Robert Bosch GmbH and
Robert Bosch LLC*


  */s/ Steven A. Reiss (w/consent)*
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
Kaj Rozga
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com
kaj.rozga@weil.com

*Counsel for Defendants Bridgestone Corporation
and Bridgestone APM Company*


  */s/ Steven A. Reiss (w/consent)*
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

6

lara.trager@weil.com

*Counsel for Defendants Calsonic Kansei Corporation and CalsonicKansei North America, Inc.*


  */s/ Michael Martinez (w/consent)*
Michael Martinez
Steven Kowal
Molly K. McGinley
Lauren Norris Donahue
**K&L GATES LLP**
70 W. Madison St., Suite 3100
Chicago, IL 60602
Phone: 312-807-4404
Fax: 312-827-8116
michael.martinez@klgates.com
steven.kowal@klgates.com
molly.mcginley@klgates.com
lauren.donahue@klgates.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
Amanda M. Fielder (P70180)
**WARNER NORCROSS & JUDD LLP**
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
Phone: 248-784-5000
wjansen@wnj.com
mbrady@wnj.com
afielder@wnj.com

*Counsel for Chiyoda Manufacturing Corporation and Chiyoda USA Corporation*


  */s/ Ronald M. McMillan (w/consent)*
John J. Eklund (OH 0010895)
Maura L. Hughes (OH 0061929)
Ronald M. McMillan (OH 0072437)
Alexander B. Reich (OH 0084869)
**CALFEE, HALTER & GRISWOLD LLP**
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607

7

(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
jeklund@calfee.com
mhughes@calfee.com
rmcmillan@calfee.com
areich@calfee.com

Maureen T. Taylor
Herbert C. Donovan
**BROOKS, WILKINS, SHARKEY & TURCO PLLC**
401 South Old Woodward, Suite 400
Birmingham, MI 48009
(248) 971-1800 (Phone)
(248) 971-1801 (Fax)
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendant Continental Automotive Systems, Inc., Continental Automotive Electronics, LLC, and Continental Automotive Korea Ltd.*

 */s/   Abram J. Ellis (w/consent)*
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
900 G Street NW
Washington, DC 20001
Telephone: 202-636-5500
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
gwang@stblaw.com
smcgovern@stblaw.com

*Counsel for Defendants Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corp.*

8

  /s/ Michael F. Tubach (w/consent)
Michael F. Tubach
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8876
Facsimile: (415) 984-8701
mtubach@omm.com

*Counsel for Defendants Eberspächer Exhaust Technology GmbH & Co. KG, Eberspächer North America, Inc., MAHLE Behr GmbH & Co. KG, and MAHLE Behr USA Inc.*

  /s/ Howard B. Iwrey (w/consent)
Howard B. Iwrey (P39635)
Cale A. Johnson (P78032)
Cody D. Rockey (P78653)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
cjohnson@dykema.com
crockey@dykema.com

Jeremy J. Calsyn
Tara L. Tavernia
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
ttavernia@cgsh.com

*Counsel for Faurecia Abgastechnik GmbH, Faurecia Systèmes d'Échappement, Faurecia Emissions Control Technologies, USA, LLC and Faurecia Emissions Control Systems, N.A., LLC*

9

*/s/ Craig S. Seebald (w/consent)*
Craig S. Seebald
Alden L. Atkins
Lindsey Vaala
Ryan Will
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., NW
Suite 500 – West
Washington, DC 20037
(202) 639-6500 (Telephone)
(202) 879-8995 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com
rwill@velaw.com

*Attorneys for Hitachi Automotive Systems, Ltd.*

*/s/ A. Paul Victor (w/consent)*
A. Paul Victor
Jeffrey L. Kessler
David Greenspan
James F. Lerner
Elizabeth A. Cate
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
(212) 294-4616
PVictor@winston.com
JKessler@winston.com
DGreenspan@winston.com
JLerner@winston.com
ECate@winston.com

*Attorneys for Defendants Hitachi Metals, Ltd.,*
*Hitachi Cable America Inc.,*
*and Hitachi Metals America, Ltd.*

*/s/ Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
Cale A. Johnson (P78032)
Cody D. Rockey (P78653)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
10

Bloomfield Hills, Michigan 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
cjohnson@dykema.com
crockey@dykema.com

*Counsel for INOAC Corporation, INOAC Group*
*North America, LLC, and INOAC USA Inc.*


 */s/ Heather P. Lamberg (w/consent)*
Heather P. Lamberg
Keith R. Palfin
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, DC 20006
Phone: (202) 228-5000
Fax: (202) 202-5100
HLamberg@winston.com
KPalfin@winston.com

Cristina M. Fernandez
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Phone: (212) 294-6700
Fax: (212) 294-4700
CFernandez@winston.com

*Attorneys for Defendants JTEKT Corporation,*
*JTEKT Automotive North America, Inc., and*
*JTEKT North America Corp., formerly*
*d/b/a Koyo Corporation of U.S.A.*


 /s/ Sheldon H. Klein (w/consent)
Sheldon H. Klein (P41062)
**BUTZEL LONG**
41000 Woodward Avenue
Stoneridge West
Bloomfield Hills, MI 48304
248-258-1414
klein@butzel.com

Richard S. Snyder, Sr.

11

Freshfields Bruckhaus Deringer US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
202-777-4565
Richard.snyder@freshfields.com

*Attorneys for Kiekert AG and Kiekert USA Inc.*

  /s/ Franklin R. Liss  (w/consent)
Franklin R. Liss
Matthew Tabas
Emily J. Blackburn
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
frank.liss@arnoldporter.com
matthew.tabas@arnoldporter.com
emily.blackburn@arnoldporter.com

  /s/ Howard B. Iwrey  (w/consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

Counsel for Defendants Koito Manufacturing Co.,
Ltd. and North American Lighting, Inc.

  */s/ George A. Nicoud III (w/consent)*
George A. Nicoud III
Rachel S. Brass
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel: (415) 393-8200
TNicoud@gibsondunn.com

12

RBrass@gibsondunn.com

Michael R. Dezsi
**DETTMER & DEZSI PLLC**
615 Griswold Street, Suite 1600
Detroit, Michigan 48226
Tel: (313) 879-1206
mdezsi@Dezsilaw.com

*Counsel for Defendants MITSUBA Corporation and
American Mitsuba Corporation*


 */s/ Kenneth R. Davis II (w/consent)*
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
Hans N. Huggler
**LANE POWELL PC**
MODA Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone: 503.778.2100
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com
hugglerh@lanepowell.com

Larry S. Gangnes
Heidi B. Bradley
**LANE POWELL PC**
U.S. Bank Centre
1420 Fifth Avenue, Suite 4200
PO Box 91302
Seattle, WA  98111-9402
Telephone: 206.223.7000
gangnesl@lanepowell.com
bradleyh@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 West Big Beaver, Suite 600

Troy, MI 48084
Telephone: 248.528.1111
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Nachi-Fujikoshi Corp.*
*and Nachi America Inc.*


*/s/ Stefan M. Meisner (w/consent)*
Stefan M. Meisner (DC Bar No. 467886)
Daniel G. Powers (DC Bar No. 997749)
Emre N. Ilter (DC Bar No. 984479)
Lisa A. Peterson (DC Bar No. 1020986)
**McDERMOTT WILL & EMERY, LLP**
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile:  (202) 756-8087
smeisner@mwe.com
dgpowers@mwe.com
eilter@mwe.com
lpeterson@mwe.com

James C. Thomas (P23801)
**O'REILLY RANCILIO, P.C.**
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
586-726-1000
jthomas@orlaw.com

*Counsel for NGK Insulators, Ltd. and*
*NGK Automotive Ceramics USA, Inc.*


*/s/ John M. Majoras (w/consent)*
John M. Majoras
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel:  (202) 879-7652
jmajoras@jonesday.com

Eric P. Enson
**JONES DAY**
14

555 South Flower St., 50th Floor
Los Angeles, CA 90071
Tel:  (213) 489-3939
epenson@jonesday.com

Stephen J. Squeri
**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Tel:  (216) 586-7237
sjsqueri@jonesday.com

Ellen L. Maxwell-Hoffman
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, WV 25301
Tel:  (304) 347-1186
emaxwell@bowlesrice.com

*Attorneys for Defendants  NGK Spark Plug Co.,
Ltd. and NGK Spark Plugs (U.S.A.), Inc.*

 */s/ Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0526
hiwrey@dykema.com
            *And*

 */s/ Rachel J. Adcox (w/consent)*
Rachel J. Adcox
**AXINN**
950 F Street NW
Washington, DC 20004
(202) 721-5406
radcox@axinn.com

John M. Tanski
90 State House Square, 9th Fl.
Hartford, CT 06103
(860) 275-8175
jtanski@axinn.com

15

Nicholas E.O. Gaglio
114 West 47th Street
New York, NY 10036
(212) 728-2228
ngaglio@axinn.com

*Counsel for Nishikawa Rubber Co. Ltd.*

 */s/  Millicent Lundburg (w/consent)*
J. David Rowe
Millicent Lundburg
**DUBOIS, BRYANT & CAMPBELL, LLP**
Colorado Tower
303 Colorado, Suite 2300
Austin, Texas  78701
(512) 457-8000
(512) 457-8008 (fax)
drowe@dbcllp.com
mlundburg@dbcllp.com

*Attorneys for Defendants Sanden Automotive*
*Components Corp.; Sanden Automotive Climate*
*Systems Corp.; and Sanden International (USA),*
*Inc.*

 */s/ Debra H. Dermody (w/consent)*
Debra H. Dermody
Michelle A. Mantine
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3302/4268
Fax: (412) 288-3063
ddermody@reedsmith.com
mmantine@reedsmith.com
            *And*

*/s/ Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304

16

Tel: (248) 203-0526
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendant SKF USA Inc.*


  */s/ Abram J. Ellis (w/consent)*
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
900 G Street NW
Washington, DC 20001
Telephone: 202-636-5500
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
gwang@stblaw.com
smcgovern@stblaw.com

*Counsel for Defendants Stanley Electric Co., Ltd.,*
*Stanley Electric U.S. Co., Inc., and II Stanley Co.,*
*Inc.*


  */s/ James H. Mutchnik (w/consent)*
James H. Mutchnik
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2350
james.mutchnik@kirkland.com

Eliot A. Adelson
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1413
Facsimile: (415) 439-1313
eliot.adelson@kirkland.com

17

Catie Ventura
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street,  N.W
Washington, D.C. 20005-5793
Telephone: (202) 879-5907
Facsimile: (202) 879-5200
catie.ventura@kirkland.com

Joanne Geha Swanson
Fred K. Herrmann
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Fax: (313) 961-0388
Email: jswanson@kerr-russell.com
         fherrmann@kerr-russell.com

*Counsel for Tenneco Inc.; Tenneco Automotive*
*Operating Co., Inc.; and Tenneco GmbH*


 */s/ David C. Giardina (w/consent)*
David C. Giardina
Kevin M. Fee
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL  60603
312-853-7000
dgiardina@sidley.com
kfee@sidley.com
         *And*


 */s/ Bradley J. Schram (w/consent)*
Bradley J. Schram
MI Bar # P26337
**HERTZ SCHRAM PC**
1760 S. Telegraph Road
Suite 3000
Bloomfield Hills, MI  48302
Tel.:  (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Attorneys for Defendants Toyo Tire & Rubber Co.,*

18

*Ltd., Toyo Automotive Parts (USA), Inc., and*
*Toyo Tire North America OE Sales LLC*


*/s/ Thomas G. McNeill (w/consent)*
Thomas G. McNeill (P36859)
L. Pahl Zinn (P57516)
Max A. Aidenbaum (P78793)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Ste 4000
Detroit, Michigan 48226
313.223.3500
tmcneill@dickinsonwright.com
pzinn@dickinsonwright.com
maidenbaum@dickinsonwright.com

*Attorneys for Usui Kokusai Sangyo Kaisha, Ltd.*
*and Usui International Corporation*


*/s/ Brian Byrne (w/consent)*
Brian Byrne
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com

*Attorney for Valeo S.A.*


*/s/ Donald M. Barnes (w/consent)*
Donald M. Barnes
Molly S. Crabtree
Ryan L. Graham
**PORTER WRIGHT MORRIS & ARTHUR LLP**
1900 K Street, NW, Suite 1110
Washington, D.C.  20006
(202) 778-3000
(202) 778-3063 (fax)
dbarnes@porterwright.com
mcrabtree@porterwright.com
rgraham@porterwright.com

19

*Attorneys for Defendants Yamada Manufacturing*
*Co., Ltd. and Yamada North America, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 <br> Honorable Marianne O. Battani |
| In Re: Wire Harness | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | Case No. 2:12-cv-00203 |
| In Re: Heater Control Panels | Case No. 2:12-cv-00403 |
| In Re: Bearings | Case No. 2:12-cv-00503 |
| In Re: Anti-Vibrational Rubber Parts | Case No. 2:13-cv-00803 |
| In Re: Windshield Wipers | Case No. 2:13-cv-00903 |
| In Re: Radiators | Case No. 2:13-cv-01003 |
| In Re: Starters | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | Case No. 2:13-cv-01203 |
| In Re: Ignition Coils | Case No. 2:13-cv-01403 |
| In Re: HID Ballasts | Case No. 2:13-cv-01703 |
| In Re: Electronic Powered Steering Assemblies | Case No. 2:13-cv-01903 |
| In Re: Fan Motors | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | Case No. 2:13-cv-02403 |
| In Re: Air Conditioning Systems | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | Case No. 2:13-cv-02803 |
| In Re: Constant Velocity Joint Boot Products | Case No. 2:14-cv-02903 |
| In Re: Spark Plugs | Case No. 2:15-cv-03003 |
| In Re: Shock Absorbers | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | Case No. 2:16-cv-03803 |
| In Re: Automotive Steel Tubes | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | Case No. 2:16-cv-04103 |
| In Re: Door Latches | Case No. 2:17-cv-11637 |
| THIS DOCUMENT RELATES TO: <br><br> END-PAYOR ACTIONS | Oral Argument Requested |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DENY GEICO'S**
**EXCLUSION REQUEST AS INVALID AND INEFFECTIVE**
**AND TO ENFORCE LITIGATION STAYS**

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the Round 3 End-Payor Plaintiffs' Settlement Agreements, the Court's Class Notice, Federal Rule of Civil Procedure 23(b)(3), and constitutional due process compel the conclusion that even if the request of GEICO and its expressly named affiliates (collectively, "GEICO") to be excluded from the Round 3 End-Payor Plaintiffs' Settlement Classes were valid as to GEICO itself, no Class Member other than GEICO and the one individual who submitted a separate request for exclusion has validly opted out of the Round 3 End-Payor Settlement Classes because GEICO did not identify any other Class Member in its exclusion request, has no subrogation rights, and did not possess any authority to exercise any other Class Member's due process rights.

2. Whether the Court should deny GEICO's request to be excluded from the Round 3 End-Payor Plaintiffs' Settlement Classes because GEICO deliberately did not comply with the requirements for doing so specified in the Court's Class Notice.

3. Whether, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651 (2018), and this Court's Preliminary Approval Orders, the Court should enforce against GEICO the litigation stays ordered in each Preliminary Approval Order.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Health Care Service Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579 (7th Cir. 2000)

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

*In re Lidoderm Antitrust Litig.*, No. 14-2521, Order Regarding Opt-Outs (N.D. Ca. Dec. 28, 2017)

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009)

*Shockley v. Tornetta Pontiac*, 553 A.2d 973 (Pa. Super. 1989)

**Statutes**

28 U.S.C. § 1651 (2018)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACSTAR Ins. Co. v. Clean Harbors, Inc.*.
    783 F. Supp. 2d 312 (D. Conn. 2011) ................................................................19, 20, 21, 22

*Allstate Ins. Co. v. Clarke*,
    527 A.2d 1021 (Pa. Super. 1987) ..........................................................................................17

*In re Auto. Parts Antitrust Litig.*,
    No. 12-MD-02311, 2016 WL 9280050 (E.D. Mich. Nov. 28, 2016) ......................................9

*In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
    770 F.2d 328 (2d Cir. 1985) ..................................................................................................36

*Beattie v. CenturyTel, Inc.*,
    No. 02-10277, 2010 WL 2740052 (E.D. Mich. July 9, 2010) ...............................................10

*Berry Petroleum Co. v. Adams & Peck*,
    518 F.2d 402 (2d Cir. 1975) ...........................................................................................15, 23

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
    93 F. Supp. 2d 876 (M.D. Tenn. 2000) .................................................................................36

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1332 (5th Cir. 1981) ...............................................................................................36

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .................................................................................27, 28

*In re Diet Drugs Prods. Liab. Litig.*,
    282 F.3d 220 (3d Cir. 2002) ...........................................................................................14, 36

*Ellis v. Gen. Motors, LLC*,
    No. 2:16-cv-11747-GCS-APP, 2017 WL 5133098 (E.D. Mich. Nov. 6, 2017) .....................9

*Fireman's Fund Ins. Co. v. Morse Signal Devices*,
    151 Cal. App. 3d 681 (Cal. Ct. App. 1984) ..........................................................................19

*Frost v. Houshold Realty Corp.*,
    61 F. Supp. 3d 740 (S.D. Oh. 2004) .....................................................................................34

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................14, 15, 23

*Health Care Service Corp. v. Brown & Williamson Tobacco Corp.*,
    208 F.3d 579 (7th Cir. 2000) ........................................................16, 17

*Hughes v. Microsoft Corp.*,
    No. C93-0178C, 2001 WL 34089697 (W.D. Wa. Mar. 21, 2001) ...........................28

*In re Inter Op Hip Prosthesis Prod. Liability Litig.*,
    174 F. Supp. 2d 648 (N.D. Ohio 2001)...................................................36

*In re Joint E. & S. Dist. Asbestos Litig.*,
    134 F.R.D. 32 (E.D.N.Y. 1990) ........................................................36

*Lasalle Town Houses Coop. Ass'n v. City of Detroit*,
    No. 4:12-CV-13747, 2016 WL 1223354 (E.D. Mich. Mar. 29, 2016)................9, 10

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999) ......................................................15

*In re Lidoderm Antitrust Litig.*,
    No. 3:14-md-0252-WHO (N.D. Ca. Dec. 28, 2017) (Ex. E) ........................... *passim*

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*,
    589 F.3d 835 (6th Cir. 2009) .........................................................35

*Moulton v. U.S. Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) .........................................................15

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    314 F.3d 99 (3d Cir. 2002).........................................................35, 36

*Ranieri v. Sherman*,
    No. 93-0022 CRR, 1994 WL 721528 (D.D.C. Dec. 23, 1994)...............................28

*Shockley v. Tornetta Pontiac*,
    553 A.2d 973 (Pa. Super. 1989)..................................................17, 18, 19

*Simpson v. Citizens Bank*,
    No. 2:12-cv-10267-DPH-RSW, 2013 WL 12122431 (E.D. Mich. Sept. 5, 2013) ...................9

*In re Vitamins Antitrust Class Actions*,
    327 F.3d 1207 (D.C. Cir. 2003) ....................................................28, 29

*In re Wachovia Corp "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
    No. 5:09-md-02015-JF, 2012 U.S. Dist. LEXIS 165304 (N.D. Cal. Nov. 19, 2012)........29, 33

*Wit v. United Behavioral Health*,
    2017 WL 930776 (N.D. Cal. Mar. 9, 2017)...............................................15

iv

**Statutes, Rules and Regulation**

28 U.S.C. § 1651 (2018) ................................................................................................35

Fed. R. Evid. 408 .........................................................................................................22

**Other Authorities**

Lee R. Russ & Thomas F. Segalia, 16 *Couch on Insurance 3d* § 223:134 (2005).................19, 21

Newberg & Conte, *Newberg on Class Actions*, § 16.16 (3d ed. 1992) ........................................15

William B. Rubenstien, *Newberg on Class Actions* § 9:49 (5th ed. updated 2018) .....................15

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ............................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................... ii

TABLE OF AUTHORITIES ........................................................................................ iii

TABLE OF CONTENTS .............................................................................................. vi

INTRODUCTION ..........................................................................................................1

BACKGROUND .............................................................................................................4

LEGAL STANDARD......................................................................................................9

ARGUMENT ................................................................................................................10

I.      GEICO DID NOT AND COULD NOT EXCLUDE CLASS MEMBERS UNDER
        A CLAIM OF SUBROGATION RIGHTS.......................................................11

        A.      GEICO Did Not Purport to Exclude Other Class Members .................12

        B.      Due Process Requires Individual Exclusion Requests..........................13

        C.      GEICO Had *No* Rights under Subrogation Law to the Antitrust Claims of
                Its Insureds and Other Claimants.........................................................16

        D.      GEICO Otherwise Lacked Authority to Exclude Other Class Members ..............20

        E.      GEICO's Exclusion of Other Unidentified Class Members Would Create
                the Types of Chaos that Courts Fear from Anonymous Mass Opt Outs ..............23

II.     GEICO'S EXCLUSION REQUEST WAS INVALID ON ITS FACE NOT
        ONLY AS TO OTHER CLASS MEMBERS BUT ALSO AS TO GEICO
        ITSELF .............................................................................................................25

        A.      GEICO's Exclusion Request Did Not Comply with the Class Notice's
                Clear and Unambiguous Requirements .................................................25

        B.      GEICO and Its Experienced Counsel Cannot Claim "Excusable Neglect"..........28

        C.      GEICO's Complaint Is Not a Substitute for a Valid Exclusion Request..............33

III.    THE COURT SHOULD ENFORCE THE LITIGATION STAYS .................35

CONCLUSION...............................................................................................................37

# INTRODUCTION

The undersigned Defendants[2] respectfully request that the Court deny the request of GEICO Corporation and certain expressly named affiliates (collectively, "GEICO") to exclude themselves from the Round 3 End-Payor Plaintiffs' ("EPPs") Class Settlements ("Round 3 Settlements" or "Settlements"). GEICO did not comply with the Court-ordered requirements for submitting a valid exclusion request and therefore GEICO and its affiliates remain Class Members[3] bound by the Round 3 Settlements.

---

[2] Defendants are: Aisan Industry Co., Ltd.; Aisan Corporation of America; Franklin Precision Industry, Inc.; Hyundam Industrial Co., Ltd.; ALPHA Corporation; Alpha Technology Corporation; Alps Electric Co., Ltd.; Alps Electric (North America), Inc.; Alps Automotive, Inc.; Robert Bosch GmbH; Robert Bosch LLC; Bridgestone Corporation; Bridgestone APM Company; Calsonic Kansei Corporation; CalsonicKansei North America, Inc.; Chiyoda Manufacturing Corporation; Chiyoda USA Corporation; Continental Automotive Systems, Inc.; Continental Automotive Electronics, LLC; Continental Automotive Korea Ltd.; Diamond Electric Mfg. Co., Ltd.; Diamond Electric Mfg. Corp.; Eberspächer Exhaust Technology GmbH & Co. KG; Eberspächer North America, Inc.; MAHLE Behr GmbH & Co. KG; MAHLE Behr USA Inc.; Faurecia Abgastechnik GmbH; Faurecia Systèmes d'Échappement; Faurecia Emissions Control Technologies, USA, LLC; Faurecia Emissions Control Systems, N.A., LLC; Hitachi Automotive Systems, Ltd.; Hitachi Metals, Ltd.; Hitachi Cable America Inc.; Hitachi Metals America, Ltd.; INOAC Corporation; INOAC Group North America, LLC; INOAC USA Inc.; JTEKT Corporation; JTEKT Automotive North America, Inc.; JTEKT North America Corp., formerly d/b/a Koyo Corporation of U.S.A.; Kiekert AG; Kiekert USA Inc.; Koito Manufacturing Co., Ltd.; North American Lighting, Inc.; MITSUBA Corporation; American Mitsuba Corporation; Nachi-Fujikoshi Corp.; Nachi America Inc.; NGK Insulators, Ltd.; NGK Automotive Ceramics USA, Inc.; NGK Spark Plug Co., Ltd.; NGK Spark Plugs (U.S.A.), Inc.; Nishikawa Rubber Co. Ltd.; Sanden Automotive Components Corp.; Sanden Automotive Climate Systems Corp.; Sanden International (USA), Inc.; SKF USA Inc.; Stanley Electric Co., Ltd.; Stanley Electric U.S. Co., Inc.; and II Stanley Co., Inc.; Tenneco Inc.; Tenneco Automotive Operating Co., Inc.; Tenneco GmbH; Toyo Tire & Rubber Co., Ltd.; Toyo Automotive Parts (USA), Inc.; Toyo Tire North America OE Sales LLC; Usui Kokusai Sangyo Kaisha, Ltd.; Usui International Corporation; Valeo S.A.; Yamada Manufacturing Co., Ltd.; Yamada North America, Inc.; Yamashita Rubber Co., Ltd.; and YUSA Corporation (collectively, "Defendants" or "Round 3 Defendants"). All capitalized terms have the same meaning as used in the Settlement Agreements, unless otherwise stated.

[3] "Class(es)" and "Class Member(s)" as used throughout the Motion and Brief refer to the Settlement Class Definitions contained in each individual Settlement Agreement, and encompass both Class Members who did not validly exclude themselves and Class Members who sought exclusion.

Before addressing the reasons why GEICO's exclusion request was invalid on its face and why this Court should not excuse its defects, Defendants address the *effects* that GEICO seeks to give its (invalid) exclusion request:  the additional exclusion of perhaps millions of other unidentified Class Members.  Not only is that effect more significant for the overall litigation and settlements, but an understanding of GEICO's apparent broader objectives is necessary to evaluate GEICO's choice to disregard the clear and unambiguous requirements in the Court-approved Class Notice.

Defendants request that, first and foremost, the Court hold that GEICO's request does not operate to exclude any Class Member other than GEICO from the Round 3 Settlements. GEICO's request does not identify any other Class Member, does not purport to exercise any other Class Member's opt out rights, and does not claim (much less demonstrate) that GEICO has the authority to exercise other Class Members' due process rights.  Nevertheless, GEICO's request – when combined with its recently filed complaint against the Round 3 Defendants and its representations to the Court in the Round 1 GEICO case's motion to dismiss briefing[4] – shows that GEICO intends to pursue, as supposed subrogee, claims arising from the purchases of other Class Members.  In other words, silently, anonymously, and without the consent or even knowledge of potentially millions of other Class Members, GEICO seeks to exclude those other Class Members from the Round 3 Settlement Classes, deny those Class Members the benefits of the Round 3 Settlements, and pursue claims subject to the Settlement Agreements and Releases that the Court has stated it intends to approve.

---

[4] *See GEICO v. Autoliv, Inc., et al.*, No. 2 :16-cv-13189-MOB-MKM (E.D. Mich.) (generally, "Round 1").

Beyond the fact that GEICO did *not* actually state that it was seeking to exercise the exclusion rights of any other Class Member and the due process requirement that exclusion requests be submitted individually by putative Class Members, GEICO's effort fails under the most basic tenets of subrogation law.  GEICO's potential subrogation rights – arising from its payments under automobile policies for covered losses – extend only to those covered losses.  Those payments create no subrogation rights to unrelated losses, including alleged losses to Class Members giving rise to antitrust claims.  Thus, GEICO, as alleged subrogee, could not have effectuated the exclusion of other Class Members from these *antitrust* class action Round 3 Settlements because GEICO had *no* subrogation right to those antitrust claims.

Any other ruling would cause chaos in the administration of the current Settlements.  It would make further class action litigation and settlements exceptionally (and unnecessarily) more complex and difficult, would violate the constitutional due process rights of potentially millions of Class Members, and would deny to the Round 3 Defendants the benefit of the bargain for which they have paid, in the aggregate, more than $432 million.  Quite simply, a third party like GEICO that is hostile to the rights and claims of other Class Members has no ability to act furtively to usurp for itself the rights of an untold number of Class Members.

Of course, because GEICO's exclusion request itself is invalid on its face and those defects are not excusable, GEICO's exclusion request can have no effect on GEICO or any other Class Member.  In the first instance, the Court should declare invalid GEICO's exclusion request, because GEICO – an experienced and sophisticated litigant represented by experienced outside counsel – did not comply with the clear and unambiguous exclusion requirements that were set forth in the Court's March 2018 Class Notice.  Nothing excuses GEICO's choice not to follow the clear instructions of this Court, especially where that choice to remain silent on the

details of its purchases hid from Defendants and the Court the precise contours of its purported claims. Each Settlement Agreement provides that failure to comply with the requirements of the Court-approved Class Notice renders the exclusion request invalid. GEICO is therefore a Class Member bound by each Settlement Agreement and Release.

Defendants request an order declaring that (a) GEICO's request does not exclude any other Class Member or their claims from the Round 3 Settlement Classes and Releases, (b) GEICO failed to exclude itself and its affiliates from the Round 3 Settlement Classes and Releases, and (c) GEICO's continued prosecution of its recently filed complaint against the Round 3 Defendants violates the litigation stays already ordered as part of the Court's Preliminary Approval Orders.

## BACKGROUND

The EPPs and each of the Round 3 Defendants entered into separate Settlement Agreements, each of which has been granted preliminary approval by the Court and awaits entry of a Final Approval Order following the Fairness Hearing on August 1, 2018. The Court must also enter a Final Judgment for each of the Round 3 Defendants, but the Round 3 Defendants requested at the Fairness Hearing that the Court delay entry of the Final Judgments to permit Defendants and Settlement Class Counsel to confer on the proper procedures for entry of Final Judgments in light of this challenge. Defendants and Settlement Class Counsel have conferred and agreed that Settlement Class Counsel will submit mutually agreeable, updated proposed forms of Final Judgments for the Court's consideration and, if acceptable, entry without further delay. The Court will retain jurisdiction to resolve all issues or questions concerning the Settlement Agreements, including to decide the validity of exclusion requests.

Each Settlement Agreement contains comparable terms establishing requirements for, and effects of, opting out of each Settlement Class as well as the effect of a failure to submit a

4

valid exclusion request.  For example, the EPPs' Settlement Agreement with the Yamashita

Defendants provides:  "A request for exclusion that does not comply with all of the provisions

set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving

such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this

Agreement upon Final Court Approval."  *See* AVRP – EPP Actions, No. 2:13-cv-00803-MOB-

MKM ("AVRP Docket"), ECF No. 145, Exhibit 1 ("Yamashita Settlement Agreement") ¶ 34.

The Yamashita Settlement Agreement specifies that each request for exclusion must, for each

Class Member seeking exclusion, include "his, her, or its full name, address and telephone

number," along with a specific statement by that individual Class Member that "he, she, or it

wishes to be excluded from the settlement."  *Id*. ¶ 34(b).  Each Defendant's Settlement

Agreement contains comparable provisions.[5]

    The Court has granted preliminary approval of each Defendant's Settlement Agreement

and has stayed further litigation of any action on EPPs' claims.  For example, on December 5,

2016, the Court preliminarily approved the Yamashita Settlement Agreement.  *See* AVRP

Docket, ECF No. 164.  As part of that Preliminary Approval Order, "[t]he litigation against

Releasees . . . is stayed except to the extent necessary to effectuate the Settlement Agreement."

*Id*. ¶ 6.  Each of the other Preliminary Approval Orders contains a similar litigation stay.[6]

    On March 13, 2018, the Court granted EPPs' Motion for Authorization to Disseminate

March 2018 Notice to the End-Payor Plaintiffs Settlement Classes ("Class Notice" or "March

2018 Notice").  *See, e.g.*, AVRP Docket, ECF No 226; Decl. of S. Wheatman, Ex. B, AVRP

---

[5] For brevity, the Defendants do not provide citations to, or copies of, each of the 32 other
Round 3 Settlement Agreements.  Each agreement is available at
www.autopartsclass.com/courtdocs.php#Agreements.

[6] Copies of other Preliminary Approval Orders are also available at
www.autopartsclass.com/courtdocs.php#Agreements.

Docket, ECF No. 225 (Long-Form Class Notice).  The Class Notice described the method by

which to request exclusion from each Settlement Class, including clear and unambiguous

instructions as to the information that a party seeking exclusion must provide about his, her, or

its purchases.  Specifically, in addition to requiring an express statement by the Class Member

that he, she, or it wished to be excluded, the Class Notice stated that an exclusion request must

provide the following individualized information:

- Your name, address, and telephone number;

- Documents reflecting your purchase or lease of a new eligible vehicle
  and/or purchase of the applicable replacement part. Purchase or lease
  documentation should include:  (a) the date of purchase or lease, (b) the
  make and model year of the new vehicle, and (c) the state where the new
  vehicle was purchased or leased.  Replacement part documentation should
  include:  (a) the date of purchase, (b) type of replacement part purchased,
  and (c) the state where the replacement part was purchased; and

- Your signature.

Class Notice ¶ 17.  The Class Notice stated that any request for exclusion must be received no

later than July 13, 2018.  *See id*.  The Class Notice warned:  "Unless you exclude yourself, you

give up any right to sue the Round 3 Settling Defendants for the claims being released in this

litigation."  *Id*. ¶ 18.

In a letter dated July 11, 2018, GEICO stated:  "The GEICO Corporation and [certain of]

its affiliates . . . have decided <u>not</u> to participate in the proposed Round 3 Settlements . . . and

request to opt out and be excluded from the Round 3 Settlements."  *See* GEICO Putative Opt Out

Ltr., July 11, 2013, at 1 (Ex. A).  GEICO generally described how GEICO believes it was injured

by Defendants' alleged conduct, including that "[t]he GEICO entities . . . have purchased

vehicles during the class periods containing parts manufactured by [Defendants] and their co-

conspirators."  *Id*. at 2.  GEICO's July 11 letter did not state that GEICO was requesting to

exclude from the Classes any of GEICO's individual insureds or other claimants.  *See id*. at 1.

On July 13, 2018, GEICO filed in this Court a complaint against each of the Round 3 Defendants, captioned *GEICO, et al. v. Aisan Indus. Co., Ltd., et al.*, No. 2:18-cv-12210-JEL-MKM (E.D. Mich.) ("Round 3 Complaint").  In that complaint, among other things, GEICO alleges that all of its "claims were also tolled during the pendency of the class action suits" in *In re Auto Parts Antitrust Litigation.  See* Round 3 Compl. ¶ 404.  GEICO asserts claims not only for its own purchases of new vehicles but also for its purchases of replacement parts for those vehicles.  *See id.* ¶ 9.  GEICO also asserts claims arising from the purchases made by other Class Members (*i.e.,* "[GEICO's] insureds and third-party claimants" to whom, or on whose behalf, GEICO made payments) of "Auto Parts and Motor Vehicles."  *See id.* ¶ 9.  Although GEICO does not explicitly allege in the complaint that the latter claims are brought by GEICO as subrogee, GEICO asserted in its Round 1 case that subrogation is the basis for GEICO to bring claims where the actual purchaser is another Class Member and to assert *American Pipe* tolling. *See* Opp. to Mot. to Dismiss, June 12, 2017, ECF No. 65, at 26-28, 31, *GEICO v. Autoliv, et al.*, No. 2:16-cv-13189-MOB-MKM (E.D. Mich.) ("Round 1 Opp'n").  According to GEICO, it has subrogation rights because it made payments under its automobile insurance policies to (or on behalf of) its insureds and other claimants for covered automobile losses, and those payments give GEICO the authority to "stand in the shoes" of those Class Members to assert other Class Members' antitrust claims and opt out rights.  *See* Round 1 Opp'n at 31.

GEICO's July 11 letter stated that GEICO understood that the Class Notice contained specific instructions that GEICO had to follow to submit a valid exclusion request:  "As instructed by the Settlement Notice . . . ."  *Id.* at 1.  Instead of following the instructions in Paragraph 17 of the Class Notice requiring that GEICO provide the details of GEICO's purchases, GEICO's letter stated:  "To identify the parts purchases, the GEICO entities will

require more information from the Round 3 Settling Defendants and third parties, including, but not limited to, equipment manufacturer parts numbers." *Id*. at 2. The July 11 letter did not offer any excuse for not identifying new vehicles that GEICO purchased.

In contrast to GEICO's request (submitted by experienced outside counsel), the one other request for exclusion from the Round 3 Settlements was submitted *pro se* by an individual and included the information required by the Class Notice for both purchases of new vehicles and replacement parts. *See* Terry Sershion Putative Opt Out Ltr., May 24, 2018 (Ex. G). Defendants have not challenged Mr. Sershion's request for exclusion.

On July 30, 2018, the Yamashita Defendants sent GEICO's counsel – identified in GEICO's July 11, 2018 letter – a seven-page letter explaining their challenge to the validity of GEICO's request to exclude itself and GEICO's right, as subrogee or otherwise, to effectuate the exclusion of other Class Members. *See* Ltr. from M. Rubin to D. Hazel, July 30, 2018 (Ex. B). Following that letter, other Defendants sent letters to GEICO's counsel challenging GEICO's exclusion request and its effects on GEICO and other Class Members, citing the reasons set out in the Yamashita Defendants' letter.[7] The Yamashita Defendants and other Round 3 Defendants proposed a meet and confer with all Round 3 Defendants, GEICO, and Settlement Class Counsel to occur at any time on Friday, August 3, 2018, or some other mutually agreeable date and time. *See id*. at 6. On July 31, 2018, the Court was notified of these challenges prior to the August 1, 2018 Fairness Hearing. *See, e.g.*, AVRP Docket, ECF No. 236.

On August 2, 2018, counsel for GEICO responded with a letter in which GEICO refused to meet and confer, but GEICO, among other things, did not dispute any of Defendants' specific factual predicates, including Defendants' understanding that GEICO was seeking to assert, as

---

[7] These additional letters are not attached but will be provided to the Court, if requested.

subrogee, claims of other Class Members.  *See* Ltr. from D. Hazel to M. Rubin, Aug. 2, 2018 (Ex. C).  Defendants and Settlement Class Counsel have also met and conferred.  Defendants understand that Settlement Class Counsel will be submitting a separate filing stating their positions on the issues raised by this motion.

On August 3, 2018, despite notification of Defendants' challenges to the validity of GEICO's exclusion request and contrary to the Court's existing stay orders, GEICO continued to prosecute its Round 3 Complaint by serving requests to waive service of the Round 3 Complaint on most or all Round 3 Defendants.  *See, e.g.*, Ltr. from B. Hudgens to J. Cooper, Aug. 3, 2018 (Ex. D).

## LEGAL STANDARD

As this Court has stated with regard to a prior settlement, "[a]ll members of the Settlement Classes that did not file a timely and ***valid*** request for exclusion are bound by the Settlements and the Settlement Agreements." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2016 WL 9280050, at *11 (E.D. Mich. Nov. 28, 2016) (emphasis added).  Likewise, other courts in this district have repeatedly held that class members who seek exclusion from a settlement but who fail to comply with the requirements in the settlement notice are bound by the settlement. *See, e.g.*, *Simpson v. Citizens Bank*, No. 2:12-cv-10267-DPH-RSW, 2013 WL 12122431, at *6 (E.D. Mich. Sept. 5, 2013) (directing that "[a] request for exclusion that does not comply with all [] requirements, that is sent to an address other than the one designated in the Notice Program, or that is not sent within the time specified, shall be invalid, and the person(s) serving such a request shall be bound as a Settlement Class Member and by the Agreement, if the Agreement is finally approved"); *Ellis v. Gen. Motors, LLC*, No. 2:16-cv-11747-GCS-APP, 2017 WL 5133098, at *4 (E.D. Mich. Nov. 6, 2017) (ordering that "all Settlement Class Members who did not timely and properly execute and submit a Request for Exclusion are deemed to have

completely released and forever discharged the Released Persons"); *Lasalle Town Houses Coop. Ass'n v. City of Detroit*, No. 4:12-CV-13747, 2016 WL 1223354, at *9 (E.D. Mich. Mar. 29, 2016) (ordering that all "valid members of the Settlement Class who did not make a valid request for exclusion in the time and manner provided in the Settlement Class Notice" were barred from litigating any of the claims described in the settlement agreement); *Beattie v. CenturyTel, Inc.*, No. 02-10277, 2010 WL 2740052, at *1 (E.D. Mich. July 9, 2010) (noting that "22 [of the opt out requests] [we]re incomplete because they failed to meet one or more of the requirements set forth in the notice of settlement," and granting the incomplete requests only because "the parties agreed at the hearing that all . . . opt-out requests should be honored").

## ARGUMENT

Defendants paid settlement amounts totaling more than $432 million in the Round 3 Settlement Agreements (along with other consideration) in exchange for a complete resolution of the Released Claims of those Class Members who did not timely submit valid exclusion requests. Because GEICO's exclusion request was facially invalid under the Court-approved exclusion requirements, GEICO remains in the Classes and any claims that GEICO has based on (i) its own purchases *or* (ii) the claims of other Class Members for their purchases must be submitted only to the Settlement Funds.  That said, Defendants below first address the issue that threatens the biggest impact on this litigation and its Settlements as well as the biggest prejudice to Defendants:  GEICO's assertion that its exclusion request also covered perhaps millions of other unidentified Class Members, who would no longer be members of the Settlement Classes.  An understanding of the scope of what GEICO is seeking to accomplish with its July 11 letter makes clear that GEICO's disregard for the requirements of the Class Notice was deliberate and not the result of excusable neglect.  As a result, GEICO and its affiliates remain in the Class and are

bound by the Settlement Agreements.  And GEICO's invalid July 11 exclusion request can have no effect on other Class Members.

## I.    GEICO DID NOT AND COULD NOT EXCLUDE CLASS MEMBERS UNDER A CLAIM OF SUBROGATION RIGHTS

In reaching the Settlements, Defendants had no reason to believe that an insurance company like GEICO would be permitted – contrary to all precedent – anonymously and secretly to opt out perhaps millions of individual unidentified Class Members without their consent and pursue double recovery from the Defendants for the same purchases where claims based on those purchases must now be made only against the Settlement Funds.  GEICO did not insure any Class Member for losses from antitrust violations.  GEICO did not mention its alleged rights of subrogation in its Round 1 or Round 2[8] complaints any more than it did in its Round 3 Complaint.  Nor did it mention subrogation in its Round 1, Round 2, or Round 3 exclusion requests.  The Court's final judgments in the Round 1 and Round 2 settlements do not include any of GEICO's alleged subrogors on their Exhibit A's, which identify the putative Class Members who were validly excluded.  Only buried on page 30 of its June 2017 brief in opposition to the Round 1 defendants' motion to dismiss did GEICO raise the unprecedented notion that by making a payment related to, for example, a vehicle collision, GEICO obtained subrogation rights that included the rights of Class Members in class action settlements arising from alleged antitrust losses for which GEICO never made any payments and in fact never issued insurance.

Treating GEICO's exclusion request as effectuating the exclusion of perhaps millions of other Class Members would be unprecedented, unconstitutional, and directly contrary to the

---

[8] *See GEICO v. Aisin Seiki Co., Ltd., et al.,* No. 2:17-cv-10893-MOB-MKM (E.D. Mich.) (generally "Round 2").

individual opt out process required by the Settlement Agreements and the Court-approved Class Notice.  And, to state the obvious, Defendants would be severely prejudiced and denied the benefit of their bargain if they have to defend – even successfully – against claims based on, related to, or arising from the purchases of Class Members who did not opt out.  For each of these reasons, the Court should not permit GEICO to violate the fundamental rights of Class Members and thereby eliminate much of the benefit and consideration Defendants bargained for.  Nor should the Court allow the chaos that would be created by GEICO's putative mass and anonymous opt out.

### A.    GEICO Did Not Purport to Exclude Other Class Members

The individualized requirements of the Class Notice and Settlement Agreements make clear that the right to opt out of each Class must be exercised individually – not anonymously *en masse* by a third party.  The quickest and simplest way to resolve the scope of what GEICO was seeking in its July 11 letter is to look at the face of the letter.

On its face, GEICO's July 11 exclusion request is devoid of any information that could be interpreted as any Class Member other than GEICO exercising his, her, or its rights.  GEICO's letter does not identify "his, her, or its full name, address, and telephone number" or the "signature" of any other Class Member, as required by the Settlement Agreements and Class Notice.  *See, e.g.*, Yamashita Settlement Agreement ¶ 34(b); Class Notice ¶ 17.  The letter also does not contain any statement that any other Class Member "wishes to be excluded from the settlement."  *See* Yamashita Settlement Agreement ¶ 34(b); Class Notice ¶ 17.  The letter contains no information on purchases even by GEICO – let alone those of any other Class Member.  GEICO's letter does not even mention subrogation.  And GEICO proffers no basis for its alleged authority – let alone evidence to confirm that authority – to exclude any Class Member other than itself from the Classes.

12

Thus, even if GEICO had some basis to assert authority to submit a timely and valid exclusion request on behalf of other Class Members to whom, or on whose behalf, GEICO made payments under GEICO's automobile insurance policies, the exclusion request that GEICO submitted does not purport to do so and therefore cannot have effectuated the exclusion of any other Class Member.

### B. Due Process Requires Individual Exclusion Requests

Even if GEICO's letter had purported to request exclusion of other anonymous Class Members, that type of mass exclusion request of unidentified individuals is invalid and inconsistent with the due process rights of the absent Class Members whose rights GEICO would thereby usurp.

An analogous anonymous mass opt out effort by insurers was rejected in *In re Lidoderm Antitrust Litig.*, No. 3:14-md-0252-WHO (N.D. Ca. Dec. 28, 2017) at the end of 2017, when a group of insurers opted out themselves and sought exclusion of "20,000 or so clients" based on the insurers' unsubstantiated assertion that the right to seek recovery on behalf of those clients rested with the insurers. *See* Order Regarding Opt-Outs, Dec. 28, 2017, slip op. at 5 (Ex. E). There, as with GEICO, the insurers failed to identify the other class members that the insurers were seeking to exclude. *See id.* at 7. Nor did the insurers – any more than GEICO – provide individual evidence (or even generalized evidence) to establish the insurers' actual authority to exercise the opt out rights that belonged to the thousands of anonymous clients of the insurers. *See id.* at 5-7.

The *Lidoderm* court observed that nothing in the settlement agreement or notice documents contemplated mass opt outs; to the contrary, the settlement documents consistently used singular, individual language regarding exclusion requests (just as the Settlement

13

Agreements and Class Notice do here[9]).  *See id*. at 6 n.2.  The court recognized that the anonymous opt out of "20,000 or so" class members would mean that the litigation could not proceed towards trial or settlement because the parties and court would have no way of knowing which *Lidoderm* class members remained in and which had been opted out.  *See id*. at 7.  For these reasons and to protect the due process rights of the other class members, the *Lidoderm* class counsel and court agreed with the defendants that the attempted anonymous mass opt out was not effective, would violate the individual due process rights of the "20,000 or so" other class members, and would preclude the litigation from being resolved through settlement or otherwise.

The same reasoning applies with even more force here.  At least in the *Lidoderm* litigation, the insurers were transparent in what they were trying to do:  opt out anonymously thousands of their "clients."  GEICO did not even assert in its exclusion request that it was seeking to exclude potentially millions of other Class Members.  The same result as in *Lidoderm* should be reached here.

The *Lidoderm* decision follows a long line of cases in which courts have rejected "mass exclusion" requests in which the class members were not individually identified, the authority to exercise the opt out was not clear and confirmed, and the opt out was not exercised individually by the Class Member.  *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998)

---

[9] *See, e.g.*, Yamashita Settlement Agreement ¶ 34(b) ("his, her, or its full name" and "that he, she, or it wishes"); Class Notice ¶ 17 ("Your name," "your purchase or lease," and "Your signature"); Suppl. Decl. of B. Pinkerton Regarding Mar. 28 Notice Dissemination and Settlement Admin. ¶ 29 (July 26, 2018)**,** AVRP Docket, ECF No. 235 ("Pursuant to Paragraph 10 of the March 2018 Notice Order, ***individuals*** who wish to exclude themselves . . . are required to submit a written request for exclusion.") (emphasis added); *id*. at Ex. C ("Requests for Exclusion":  identifying individually only one Class Member who "submitted timely request for exclusion" and GEICO).

(holding that allowing a plaintiff to effectuate a group opt out would "infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in suit as class members") (citing Newberg & Conte, *Newberg on Class Actions*, § 16.16 at 90 (3d ed. 1992)); *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 241 (3d Cir. 2002) (affirming injunction holding that "opting out is an individual right and it must be exercised individually" against Texas state court litigation when plaintiffs in a parallel suit attempted to opt out all Texas plaintiffs); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2d Cir. 1975) ("[O]pting out of a class action, like the decision to participate in it, must be an individual decision."), *abrogated on other grounds by Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993); *Wit v. United Behavioral Health*, 2017 WL 930776, at *3 (N.D. Cal. Mar. 9, 2017) (following *Hanlon*); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 439 (S.D. Tex. 1999) (same); *see generally* William B. Rubenstien, *Newberg on Class Actions* § 9:49 (5th ed. updated 2018) ("[A] plaintiff who chooses to opt out herself may not also opt out a group *en masse* without the express consent of each individual.").

Recognizing these concerns, the Sixth Circuit has held that requiring individually signed opt out requests – as the Court did here in the Class Notice at Paragraph 17 – is well within the Court's discretion, especially where there is a potential conflict between the individual class member and the entity seeking to exclude him, her, or it.  *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 355 (6th Cir. 2009) ("Given the real risk that the attorney-signed opt-out forms did not reflect the wishes of class members, the district court appropriately exercised its power by requiring individually signed opt-out forms (and rejected the attorney-signed forms).") (internal citations omitted).  Here, there is a clear conflict between GEICO and each of the Class Members against whom GEICO purports to be a subrogee:  GEICO is seeking to take over the claims of

15

those Class Members, opt them out, and thereby effectively deny many Class Members recovery

even on claims where GEICO is **not** a potential subrogee or where GEICO is (at most) only

partially subrogated (as explained further below in Section I.E).

### C.     GEICO Had *No* Rights under Subrogation Law to the Antitrust Claims of Its Insureds and Other Claimants

As was the case with the *Lidoderm* insurers, GEICO proffered with its exclusion request

letter no authorization from other Class Members to exercise their rights to seek exclusion from

(or to elect to remain in) each Class.  Instead, GEICO's **only** basis for claiming authority to

exercise the rights of other Class Members is its argument – in its opposition to the Round 1

motion to dismiss – that GEICO has subrogation rights to the antitrust recoveries of its insureds

or claimants to or for whom GEICO made payments under automobile insurance policies.  *See*

Round 1 Opp'n at 31.  GEICO is simply wrong that payments under an **automobile insurance**

**policy** for damage to a vehicle from, for example, a collision can **ever** create subrogation rights

of any kind against **antitrust** losses or any other loss for which GEICO did not make a payment

and did not even offer insurance.

In *Health Care Service Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581

(7th Cir. 2000), like GEICO here, health insurance companies sought to pursue, as subrogees, the

antitrust claims of their insureds based on the insurers' payments of health care costs allegedly

caused by tobacco companies.  Judge Easterbrook explained the absurdity of this position:

> Doubtless the [insurers] are subrogated to their insureds' tort claims.
> Yet this complaint is dominated by claims under the antitrust laws .
> . . .  It is unclear why health insurers are entitled to pursue these
> claims, when (for example) the complaint does not give any reason
> to believe that the insurers have compensated the insureds for
> antitrust injury or purchased the right to pursue smokers' antitrust
> claims.

*Id.* GEICO offers no better reason why an automobile insurance company that has never paid a penny for alleged antitrust losses of its insureds or claimants would have any subrogation rights to the antitrust claims of those Class Members.[10]

The case of *Shockley v. Tornetta Pontiac*, 553 A.2d 973 (Pa. Super. 1989) reached the same conclusion in the context of automobile insurance where the insurer overreached in asserting subrogation rights to losses unrelated to its insurance payments or coverage. In a fact pattern worthy of a law school class, the insured purchased a vehicle from a dealership and obtained standard automobile insurance for that vehicle from the insurer. The vehicle was subsequently destroyed by fire. Upon investigation of the fire, the police discovered that the vehicle had been stolen from its rightful owner and unlawfully sold by the dealership to the insured. The insured sued the dealership for breach of warranty of title and recovered the complete value of the vehicle. The insured then sought coverage from the insurance company for the losses caused by the fire. The insurer argued that the subrogation provisions in its policy relieved the insurer of the obligation to pay because the insurer had a subrogation right to the recovery from the dealership for the breach of warranty of title claim, which had fully covered the insured's losses. *Id.* at 974-75.

The court held that for the insurer to obtain subrogation rights to justify denying coverage for the fire, "the insured must recover for the same loss for which the insurer is being asked to pay or has already paid the insured." *Id.* at 975 (citing *Allstate Ins. Co. v. Clarke*, 527 A.2d 1021 (Pa. Super. 1987)). The insurer was "being called upon to pay for a fire loss and has a right to

---

[10] Judge Easterbrook also observed that an insurer that wants to assert subrogation claims "must identify the persons to whose claims the insurers are subrogated and show that the insureds are . . . entitled to recover [and] that the plaintiffs have a contractual right to proceed on each insured's behalf with respect to each claim." *Id.* GEICO did not do that in its July 11 letter, as discussed in Section I.A, and has not done so even in its Round 3 Complaint.

avoid payment to the extent [the insured] has received any payment *for that fire loss*."  *Id.*
(emphasis added).  However, the "insurer [] is not entitled to cite payments to the . . . insured []
for losses *other than the fire loss* to avoid payment of its obligations under the contract."  *Id.*
(emphasis added).  "[N]or would [the insurer] be entitled to subrogate itself and assert a claim to
payments by others to the [insured] *for a loss other than that for which the [insurer] had paid
the [insured]*."  *Id.* (citing *Clarke*, supra) (emphasis in original).  "In other words, although the
insurer may 'stand in the shoes of the insured' upon paying a claim, it does so *only to the extent
and with regard to the loss it covered*."  *Id.* (emphasis added).

    Applying that basic principle of subrogation law here, GEICO "does not magically
acquire every conceivable right of the insured by virtue of meeting its contractual obligation"
under its automobile insurance policies to cover losses from, for example, automobile collisions.
*Id.* at 975-76.  Here as in *Shockley*, "[c]learly, the monies received by [Class Members] from [the
Settlement Funds] do not relate to" the insureds' automobile collisions, "but instead, [are] for
[antitrust injury]."  *Id.* at 976.

    The *Shockley* court went on to observe further that an additional "reason to find [the
insurer's] subrogation argument unconvincing . . . is the fact that the recovery [by the insured]
was for a loss that [the insurer] . . . did not even extend coverage for."  *Id.*  The same is true here.
Nowhere – not in the July 11 letter, not in the complaints GEICO has filed, and not in its
opposition to the Round 1 defendants' motion to dismiss – does GEICO suggest that it offered
insurance for antitrust injuries, much less that it made payments pursuant to a (non-existent)
policy insuring against antitrust injury.  As in *Shockley*, there is no reason to believe that GEICO
"would have provided any kind of coverage had [insureds] suffered a loss related to" an antitrust
cartel that caused its insureds to overpay for vehicles or replacement parts absent a covered loss

like a collision.  *Id.*  "We . . . suspect that [GEICO] would have vehemently argued that coverage did not apply for such a[n antitrust] loss under the policy."  *Id.*  GEICO's position therefore should be rejected because there is no subrogation right to "a loss different than that which [the insurer] . . . cover[ed]" and there is certainly no subrogation right "against monies received by [the insured] for a loss the type [for] which [GEICO] had not even extended any insurance coverage."  *Id.*  GEICO's claim that it is subrogee to Class Members' antitrust recoveries therefore "contravenes the entire concept of subrogation."  *Id.*

Other courts agree.  *See, e.g.*, *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App. 3d 681, 691 (Cal. Ct. App. 1984) (holding that insurer that made payments for burglary and fire losses was not subrogated to its insureds' antitrust claims against their alarm companies for antitrust violations related to a price-fixing conspiracy, because an insurer is subrogated only where it "has compensated the insured for the same loss for which the party to be charged is liable"); *see also ACSTAR Ins. Co. v. Clean Harbors, Inc.*. 783 F. Supp. 2d 312, 317 (D. Conn. 2011) (explaining that subrogation rights come into existence only "'where an insured is entitled to receive recovery *for the same loss* from more than one source, e.g., the insurer and the tortfeasor.'") (quoting Lee R. Russ & Thomas F. Segalia, 16 *Couch on Insurance 3d* § 223:134 (2005) (emphasis added)).

Thus, beyond the fact that GEICO did not purport to seek the exclusion of any other Class Members, GEICO had no subrogation rights to the antitrust claims of other Class Members and therefore GEICO had no right to "stand in the shoes" of any other Class Members for any purpose, including to seek their exclusion from the Classes.

### D. GEICO Otherwise Lacked Authority to Exclude Other Class Members

Even if GEICO's theories did not contravene the basic tenets of subrogation, a host of other reasons preclude GEICO's attempt to exercise, as potential subrogee, the due process rights of other Class Members.

GEICO has not pointed to any language in its insurance contracts as authorizing GEICO to exercise the constitutional rights of its insureds or claimants to participate in or be excluded from an antitrust class action. Nor could GEICO do so. For example, Defendants have reviewed a standard GEICO automobile insurance contract provisions setting out GEICO's "RIGHT TO RECOVER PAYMENT." *See* GEICO Personal Automobile Insurance Policy at 26 (Ex. F). Nothing in that policy purports to give GEICO authority to exercise the class action participation or exclusion rights of its insureds and claimants. Nor does the language purport to assign all of an insured's or claimant's claims and rights related to its vehicles to GEICO. Rather, the language states that "we shall be subrogated to that right" of the insured's or claimant's to "recover damages" but only "to the extent of our payment." *Id*.

No Class Member would have any reason to believe from this language that the Class Member was signing over to GEICO his, her, or its due process right to participate in, or opt out of, antitrust class actions unrelated to the collision or other vehicular event that caused GEICO to make a payment to, or on behalf of, the insured or other claimant. A Class Member certainly would have no reason to believe he, she, or it was giving GEICO the right to opt out the Class Member from pursuing recovery from the Settlement Funds related to purchases of vehicles or parts for which GEICO never made any payment or made only a partial payment.

GEICO's effort to exercise, as subrogee, the rights of other Class Members also fails, ***alternatively and separately***, under the "made-whole" doctrine in subrogation law. In *ACSTAR Ins. Co. v. Clean Harbors, Inc.*, the insured settled with a third party without the consent of the

20

insurer.  When the insured was later sued, the insurer sought to deny coverage because the insured's prior settlement had "prejudiced" the insurer's supposed subrogation rights in violation of the insurance policy language (which language is substantively identical to the language in GEICO's policy).  *See ACSTAR*, 783 F. Supp. 2d at 314-15; c*ompare id*. at 315 *with* Ex. F at 26.  But the third-party settlement did not fully compensate the insured for its losses.  *Id*. at 318.  The *ACSTAR* court explained that under the "made-whole" doctrine, "it is only after the insured has been fully compensated for all of the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights."  783 F. Supp. 2d at 317 (quoting Lee R. Russ & Thomas F. Segalia, 16 *Couch on Insurance 3d* § 223:134 (2005)).  Because the insured had not been fully compensated for its losses, the insurer had no subrogation rights and therefore the insurer's (non-existent) subrogation rights were not "prejudiced" and the policy was not breached.  *Id*. at 318.  Here, GEICO cannot establish (and has not tried to do so) that Class Members were made whole by GEICO's payments to or on their behalf even for the losses that GEICO insured,[11] let alone by payments to Class Members under these antitrust Class Settlements – which by definition were compromises that reflect the Classes' litigation risks and also will deduct fees and expenses.

Moreover, the *ACSTAR* court explained that a primary reason for the "made-whole" doctrine is to prevent precisely what GEICO is suggesting here:  "a general assignment of claims upon a single payment by the insurer, regardless of how small that payment is relative to the insured's total loss."  783 F. Supp. 2d at 320.  That type of rule would "deprive an insured of full compensation when the insured's injuries are greater than the insurer's" payment to the insured.

---

[11] *See, e.g.*, GEICO, *Glossary of Insurance Terms and Definitions*, https://www.geico.com/information/insurance-terms/ (defining "Deductible" as the "portion of a claim [the insured will] pay out of pocket").

*Id.* As discussed in Section I.E below, there is every reason to believe that Class Members who were insured by GEICO (and for whose losses GEICO has made a payment) will have claims against the Settlement Funds for which GEICO has never made a payment or for which GEICO only made a payment for a fraction of the Class Members' claimed losses in connection with a covered claim under GEICO's automobile insurance policies (*e.g.*, property damage from an automobile collision).  GEICO's putative exclusion of those Class Members would deny those Class Members recovery for their claims even though they exceed GEICO's payments.  That is precisely the type of inequity that the "made-whole" doctrine prevents.

In sum, GEICO is a "sophisticated" company and litigant that has been aware of this litigation for years, had notice of the Settlements long before the formal Class Notice, and was aware of the opt out deadline and procedures.  *See, e.g.* Ltr. from D. Hazel, June 8, 2018, at 2-3 (describing GEICO as "sophisticated litigant in U.S. courts" and demanding payment before exclusion and objection deadline established by Court's "Order") (Ex. H).[12]  GEICO surely knew the identities of its insureds and claimants to whom, or on whose behalf, GEICO made payments.  GEICO was free to contact those insureds and claimants and ask them to submit exclusion requests, provide GEICO authorization to submit those requests, or sell the rights to the antitrust claims to GEICO.  GEICO apparently did none of that.  Nothing gave GEICO the right to exercise the individual due process class participation or exclusion rights of other Class Members without producing confirmatory evidence of GEICO's authority to do so for each individual Class Member.  This failure is fatal to GEICO's effort to effectuate the exclusion of other Class Members apart from all of the other reasons its effort was invalid.

---

[12]  Although labeled "Rule 408," Rule 408 permits the Court to consider the letter "for another purpose."  *See* Fed. R. Evid. 408.

**E.    GEICO's Exclusion of Other Unidentified Class Members Would Create the Types of Chaos that Courts Fear from Anonymous Mass Opt Outs**

Again, as the *Lidoderm* court recognized, the exclusion of untold numbers of unidentified Class Members would transform the orderly process of this litigation into chaos with no clear path forward for administering these Settlements and managing the remainder of the litigation. *See Lidoderm*, *supra*, slip op. at 7; *see also Berry*, 518 F.2d at 412 (requiring exclusion requests to be submitted in the names of the individual class members is essential to avoid "chaos" in managing class litigation and administering settlements); *Hanlon*, 150 F.3d at 1024 (permitting the exercise of *en masse* opt outs "would lead to chaos in the management of class actions") (internal citation and internal quotation marks omitted).

Defendants offer below only a few examples of the confusion that could result from giving effect to GEICO's anonymous mass-opt out strategy.  These examples also illustrate the injury to other Class Members that GEICO's efforts would cause and the inequities that would result from GEICO's theories, as discussed more generally above.

- **Without Identification of the Class Members GEICO Seeks to Exclude, Proper Payment of Class Claims Is Impossible.**  Settlement Class Counsel, the Claims Administrator, and the Court will have no idea whether to pay the claims of otherwise-eligible appearing Class Members who almost certainly would have no idea that GEICO has tried to exclude them and thus would remain likely to make claims against the Settlement Funds.  Those Class Members will submit improper (but good faith) claims to the Claims Administrator, who, lacking information sufficient to deny the claims, will likely pay those claims.  But those payments would dilute the Settlement Funds available for recovery by actual Class Members (without protecting Defendants from GEICO's Round 3 Complaint and duplicative liability exposure on the Class Members' claims released and paid in the Settlements).

- **If Class Members Were Identified, GEICO's Exclusion of Them Would Require the Class Administrator to Deny Those Class Members' Non-GEICO Related Claims.**  If the Claims Administrator were somehow able to identify the individual Class Members that GEICO seeks to exclude anonymously, the Claims Administrator would be required to deny any claims by those otherwise eligible Class Members, *including claims that have nothing to do with GEICO's supposed subrogation rights*.  For example, many – if not most – Class Members are likely to have multiple

23

claims based on, for example, their purchases of multiple new vehicles during the Class Period, and GEICO typically may have made a payment related to only one of those vehicles or a replacement part for only one of those vehicles. But when a Class Member is excluded from a Class, that Class Member is excluded from a Class for all of his or her purchases and claims for the purchase of all vehicles and all replacement parts for those vehicles. GEICO would thereby deny that Class Member the right to make *any* claim against the Settlement Fund, *including claims for new vehicles and claims related to the vehicles for which GEICO has never made a payment and thus has no conceivable subrogation right*.

- **GEICO's Payments Typically Would Have Covered Only Part of an Insured's Automobile Collision Loss and Thus Would (At Most) Create *Partial* Subrogation Rights.** GEICO does not appear to assert any right to assert Class Members' claims for their purchases of their new vehicles. Unlike Class Members' claims for the allegedly inflated value of parts in new vehicles, GEICO's payments will have been based on vehicles' (and their parts') *depreciated* value and thus GEICO's payments (and any subrogation rights) will typically be a fraction of the Class Members' claims arising out of their purchases of new vehicles. GEICO also claims that it can assert claims for the allegedly inflated amount it paid for vehicles that were a total loss. But that is the purchase of a used vehicle, and GEICO pays only the depreciated value. Likewise, as to replacement parts for which GEICO made payments as part of collision repairs, upon information and belief,[13] GEICO bases those payments for most parts on the cost of aftermarket, generic replacement parts and not based on the cost of the genuine OEM replacement parts that were manufactured or sold by the Defendants. Class Members who insist on genuine OEM parts pay the difference in price. In both examples(and not even considering deductibles), GEICO is, at best, only *partially* subrogated to the extent of its partial payment. But there is no such thing as a partial opt out: GEICO either opted the Class Members out entirely or not at all. If GEICO's theories were accepted, those partially subrogated Class Members may effectively be denied recovery for their larger claims against the Settlement Funds and denied a meaningful path to recovery on other claims against which GEICO asserts no subrogation rights.[14]

---

[13] *See, e.g.*, GEICO, *Glossary of Insurance Terms and Definitions*, http://www.geico.com/information/insurance-terms (defining "Competitive Auto Repair Parts" as aftermarket parts that "meet or exceed the quality of [OEM] parts, but cost less"); *How to Get OEM Parts for an Insurance Claim*, The Balance (Aug. 29, 2017), https://www.thebalance.com/how-to-get-oem-parts-for-an-insurance-claim-527408) ("[M]ost insurance carriers only cover the use of aftermarket parts and not OEM parts.").

[14] At the recent Fairness Hearing, the Court and Settlement Class Counsel observed that the individual claims of most Class Members in each Class are sufficiently small that Class Members typically would not bring individual claims and would recover only by participating in the class recoveries.

These are but a few examples of the ways that the mass opt out of anonymous Class Members would create chaos in administering the Round 3 Settlements, would deny without due process the rights of large numbers of individual Class Members, and would cause the type of inequity that underlies the "made-whole" doctrine discussed above. Both the Round 3 Defendants who have settled and those defendants who remain in litigation, along with the EPPs and the Court, would be left to wonder who was in and who was out of the current and potential settlements. This Court should heed the warnings of *Lidoderm*, *Berry*, and *Hanlon* and hold that GEICO's attempted exclusion of Class Members other than itself was ineffective.[15]

## II.   GEICO'S EXCLUSION REQUEST WAS INVALID ON ITS FACE NOT ONLY AS TO OTHER CLASS MEMBERS BUT ALSO AS TO GEICO ITSELF

GEICO's exclusion request, on its face, failed to comply with this Court's clear and unambiguous instructions for how to seek exclusion from the Classes. GEICO's intentional disregard for this Court's Class Notice exclusion requirements is not excusable and renders the request invalid not only for GEICO itself, but also for other Class Members without even needing to consider the issues discussed in Section I above.

### A.   GEICO's Exclusion Request Did Not Comply with the Class Notice's Clear and Unambiguous Requirements

GEICO's July 11 exclusion request asserts that GEICO purchased "vehicles containing parts manufactured by the Round 3 Settling Defendants and their co-conspirators," which would make GEICO a potential Class Member of the Settlement Classes if those vehicles were new. *See* Ex. A at 1.[16] The Class Notice required GEICO to include in its exclusion request

---

[15] None of these concerns about competing and double recoveries arise if both GEICO and other Class Members are in the Classes and submitting claims to the Claims Administrator. There are well established processes for Claims Administrators, under the supervision and ultimate approval of the Court, to resolve conflicting claims.

[16] Certain of the Class Definitions also require that the new vehicle be for "personal use."

information showing the dates of purchases and makes and model years of the vehicles.  *See* Class Notice ¶ 17.  GEICO's request did not provide that information, even for its fleet vehicle purchases, which information exists solely in GEICO's possession, custody, and control. GEICO did not provide any reason for its failure to comply with the exclusion requirements regarding GEICO's purchases of vehicles.  Notably, the Class Notice directed GEICO and other Class Members "[t]o find out if your vehicle qualifies, go to **www.AutoPartsClass.com**," a public website made available by Settlement Class Counsel that, among other things, identifies by make, model, and model year those "Vehicles Included in Round 3 Settlements."  *See* Class Notice at 1.[17]

Although not specifically mentioned in the July 11 exclusion request, GEICO's Round 3 Complaint alleges that GEICO was a Class Member based on its purchases of replacement parts for its fleet vehicles.  *See* Compl. ¶ 9.  For those replacement part purchases, GEICO's exclusion request was required to include information showing the dates of its purchases of replacement parts, types of parts purchased, and where the parts were purchased.  *See* Class Notice ¶ 17. Again, that information is located exclusively in the possession, custody, and control of GEICO. In its July 11 letter, GEICO stated only that "[t]o identify the parts purchased, the GEICO entities will require more information from the Round 3 Settling Defendants and third parties, including, but not limited to, equipment manufacturer parts numbers."  *See* Ex. A at 2.  The Settlements themselves are organized by part type with the settlement website listing each relevant category of parts next to the "Vehicles Included in Round 3 Settlements."[18]  There is no excusable reason for GEICO to have omitted it.

---

[17] *See also Vehicles Included in Round 3 Settlements*, https://www.autopartsclass.com/included_round_3.php

[18] *See supra* n. 17.

Moreover, GEICO's Round 3 Complaint purports to place dollar figures on GEICO's purchases of each category of parts. *See* Round 3 Compl. ¶¶ 405(a)-(dd). GEICO further alleged in that complaint that "GEICO Corporation purchased Auto Parts . . . from one or more Defendants during the Relevant Time Periods." *Id.* ¶ 18. Either GEICO and its counsel had no basis for these allegations, or GEICO's excuse for not "identify[ing] the parts purchased" in its July 11 letter was without basis. *See* Ex. A at 2. Furthermore, prior to filing either its Round 3 Complaint or submitting its July 11 letter, GEICO sent unsolicited demand letters that included specific estimates of GEICO's spending on replacement parts for each part category, ***including actual spend for the period 2012-2014***. *See, e.g.*, Ex. H (related to Anti-Vibration Rubber Parts). Thus, prior to submitting its exclusion request, GEICO apparently had done the work to identify replacement parts for at least a three-year time period.

GEICO's failure to comply is similar to *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008). In both cases, the "procedures for opting out from the class were plainly set forth in the [n]otice of [s]ettlement and were not difficult to follow." *Id.* at 499. Because the required purchase information is not reasonably available to Defendants (which did not sell directly to the EPPs), putative Class Member purchasers like GEICO are "uniquely situated to provide [this] information." *Id.* And the details required by the Class Notice are "crucial because the Defendants need to know what they are facing." *Id.*

In *Delphi*, individuals who did not want to participate in the settlement or be included in the class were required to submit a request for exclusion that "***must state*** . . . the person's purchase and sales of Delphi Securities during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each such purchase or sale, and whether such person continues to hold such Delphi Securities." *Id.*

(emphasis in original).  The court emphasized that the requirement to provide this information was included in the notice mailed to class members, with a warning that "'[i]f you do not follow these procedures . . . you **will not** be excluded from the Class and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement.'" *Id*. (emphasis in original).

Despite these warnings in the *Delphi* notice, only eight of 62 exclusion requests provided the requisite information regarding their purchases and sales of the securities.  The court held that the putative class members who had not provided the information required by the settlement notice were not excluded from the settlement.  *Id*.; *see also Ranieri v. Sherman*, No. 93-0022 CRR, 1994 WL 721528, at *6-7 (D.D.C. Dec. 23, 1994) (disallowing 60 exclusion requests that did not comply with the procedures set forth in the class notice); *Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *8 (W.D. Wa. Mar. 21, 2001) (rejecting 21 exclusion requests because they did not conform to the "procedures for opting out from the class [that] were plainly set forth in the notice of the settlement and were not difficult to follow").  In comparison to the apparently *pro se* class members in *Delphi* and these other cases, GEICO is a sophisticated corporation that submitted its exclusion request through experienced litigation counsel.

### B.    GEICO and Its Experienced Counsel Cannot Claim "Excusable Neglect"

The facts and circumstances here are also very different from those in, for example, *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207 (D.C. Cir. 2003), in which the court found "excusable neglect" in a counsel's failure to submit a timely opt out.  *Id*. at 1208.  In that case, within two weeks of the posting of the final judgment online, the class member's counsel reviewed the judgement's exhibits and "discovered that [the class member] was not listed among the class members who had timely opted out."  *Id*. at 1209.  "Two days later, [the counsel] filed a

Motion . . . to allow [the class member] to opt out of the settlement." *Id.* On these facts, the D.C. Circuit held that the district court did not abuse its discretion in finding "excusable neglect" where there was "not bad-faith." *Id.*

Here, two days after being notified of Defendants' challenge to the validity of GEICO's exclusion request, GEICO counsel, did not enter an appearance at the Fairness Hearing on August 1, did not speak up when counsel for Defendants and Settlement Class Counsel discussed the validity of GEICO's exclusion request, and did not approach counsel for either side at the hearing to discuss the issue. The next day, GEICO's counsel responded by letter, refused to meet and confer, offered no excuse for its failure to comply with the Court's clear instructions, and has taken no steps since that time to remedy its failures. *See* Ex. C.

Moreover, GEICO's July 11 letter expressly acknowledges that "the Settlement Notice" "instructed" GEICO on the steps required to "request exclusion" and thus GEICO cannot claim a lack of knowledge of the Court's instructions. *See* Ex. A at 1; *see also* Ex. H (on June 8, 2018, stating knowledge of deadline for exclusions and objections under Court's "Order"). GEICO and its counsel simply chose to ignore the Court's requirements. That is not "neglect" – excusable or otherwise. *See, e.g., In re Wachovia Corp "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, No. 5:09-md-02015-JF, 2012 U.S. Dist. LEXIS 165304, at *11-12 (N.D. Cal. Nov. 19, 2012) (finding no "excusable neglect" even where class member did "offer an explanation for her delay in seeking to opt out of the settlement," but "that explanation is contradicted by credible evidence," the class member did not pay her mortgage for four years, and the class member "failed to return . . . telephone calls and failed to provide information necessary to process her modification application," all of which indicated to the court that the

class member did not neglect to comply but had deliberately taken advantage of a process to avoid "any mortgage payments whatsoever").

GEICO certainly maintains better records concerning its vehicle purchases or replacement part purchases than many individual Class Members, who have proven able to comply with the Class Notice in seeking exclusion from the Settlements.  *See* Ex. G.  Unlike individuals who typically buy new cars *ad hoc* from multiple auto dealerships, GEICO "purchases fleet Motor Vehicles directly from OEMs."  Round 3 Compl. ¶ 381.  GEICO's fleet purchases are surely documented in detailed contracts, purchase orders, and other records that set out specifically all of the information required by the Class Notice.  In fact, the fleet industry press was able to report in 2013 that "GEICO owns 2,469 units, 2,350 of which are cars."[19] Thus, GEICO does not even offer a reason in its July 11 letter for ignoring the Class Notice's clear instruction to provide basic information about GEICO's purchases of vehicles.  Upon information and belief, at least a significant portion of that fleet is made up of Ford vehicles, with GEICO's Director of Travel & Fleet serving on Ford's Fleet Advisory Board.[20]  As a Ford fleet purchaser, GEICO has at its disposal dedicated and centralized parts services for its fleet.[21] There is no reason to believe that GEICO lacks access to centralized purchase records for replacement parts for its fleet vehicles.

---

[19] *Automotive Fleet, Ford Special Issue*, Auto Fleet 31 (2013), https://autofleet.epubxp.com/i/136097-ford-issue-2013/31?m4.

[20] *See Fleet Preview Guide*, Fleet.Ford.Com, https://www.fleet.ford.com/resources/ford/general/pdf/brochures/15_FleetPreviewGuide_Rev2.pdf.

[21] *See, e.g.*, *Parts and Services*, Fleet.Ford.Com, https://www.fleet.ford.com/partsandservice/; https://parts.ford.com/en.html (offering the option to click on "I am searching for parts because I am a commercial fleet").

GEICO's failure to comply with the Class Notice requirements is especially conspicuous in comparison to the only other putative Class Member who requested exclusion from the Round 3 Settlement Classes – a *pro se* individual who did list in his exclusion request the required information for both new vehicles and replacement parts.  *See* Ex. G.

Presumably, GEICO and its counsel saw strategic or tactical advantages in knowingly and deliberately disregarding the Court's instructions in the Class Notice.  For example, if GEICO had identified the vehicle and replacement part purchases that it was seeking to exclude from the Classes, GEICO would have made transparent that it was seeking to effectuate the exclusion not only of GEICO but also perhaps millions of other Class Members under a claim of subrogation.  Upon making clear that GEICO was seeking to exclude those other Class Members, GEICO would likely have faced immediate opposition from not only Defendants in Rounds 1 and 2, but also likely other Class Members, Settlement Class Counsel, or even *sua sponte* by the Court.  For the reasons discussed in Section 1, GEICO's efforts would likely have been quickly quashed.  In the alternative, GEICO could have listed its own purchases only and omitted purchases by its insureds and other claimants.  That omission would have highlighted that GEICO had not sought the exclusion of other Class Members.

Either way, GEICO's claims would quickly have been narrowed to – at most – claims for its relatively small fleet of vehicles and replacement parts for those vehicles, which were claims that GEICO did not even bother to include in its Round 1 complaint.  Only by deliberately omitting the required information could GEICO continue to advance its reimbursement claims without making clear and unambiguous GEICO's position that it had the right to exclude other Class Members and was seeking to do so.  By virtue of this disregard of the Class Notice, for these Round 3 Defendants, GEICO was able to allege that it "purchased ***or reimbursed*** . . . for

Auto Parts in amounts exceeding $4.8 billion." *See* Round 3 Compl. ¶ 405 (emphasis added). If GEICO had complied with the Class Notice requirements, GEICO would have likely been left with allegations in the thousands.

GEICO's tactical choice preserved to GEICO what appears to be its primary litigation strategy: raise the specter of huge potential liability and high defense costs in the hopes of scaring Defendants into offering early settlements regardless of the ultimate lack of merit to GEICO's claims. *See* Ex. H. at 3 (stating that "GEICO is a sophisticated litigant in U.S. courts" that "understands the risks . . . to your clients" and "has accounted for the expense of protracted litigation" and then demanding $18 million to forgo the right to opt out or object). Upon information and belief, with GEICO serving as a member of Ford's Fleet Advisory Committee, compliance with the Class Notice would likely have revealed that many or most of GEICO's vehicles are Fords. According to the settlement website, Ford vehicles contain only a minority of the relevant parts. For example, relevant anti-vibration rubber parts are not in Ford vehicles and thus are also not replacement parts for those vehicles.[22] GEICO's claims – especially against certain Defendants – would be immediately weakened by the requisite Class Notice disclosures.

Moreover, upon information and belief, GEICO overwhelmingly uses less expensive, aftermarket replacement parts and not parts manufactured or sold by Defendants – a fact that would have been evident if GEICO had disclosed its purchases of replacement parts manufactured or sold by Defendants. *See supra* n. 13. Only by omitting these details could GEICO appear to credibly allege purchases or reimbursements of replacement parts "exceeding $4.8 billion." *See* Round 3 Compl. ¶ 405. And, perhaps most importantly, GEICO would not

---

[22] *See Vehicles Included in Round 3 Settlements*,
https://www.autopartsclass.com/included_round_3.php.

have been able, with even a hint of credibility, to send demand letters to Defendants, including, by way of example, its demand that a single Defendant pay $18 million for GEICO to "forego[] its right to object or opt out" and basing that demand on estimated spending of slightly less than $21 million on Anti-Vibration Rubber Parts ("AVRPs") without any claim that GEICO itself purchased a single AVRP manufactured or sold by an AVRP Defendant. *See* Ex. H at 2. GEICO's effort to create pressure to settle quickly before Defendants or the Court look too closely at its claims is evident from GEICO's unsolicited demand for a signed agreement by "June 29, 2018 and payment issued by July 9, 2018" "before the date established in the [Class Notice] Order for exclusions and objections." *Id*. at 2-3

It is also worth noting that apart from GEICO, the Class Notice requirements were reasonable and served an additional substantive purpose in the context of this automotive litigation for many individual Class Members.  Vehicles are frequently jointly purchased.  Without knowing the vehicle or replacement part purchase information of opt outs, it would be impossible to determine whether the same purchase was being pursued both in and out of the Settlement by different Class Members with a joint interest in the vehicle or replacement part purchase.  For example, the other putative Class Member who sought exclusion has provided the information that will allow the Claims Administrator to ensure that no one else makes a claim against the Settlement Funds for the vehicles identified by Mr. Sershion.  *See* Ex. G.

### C.    GEICO's Complaint Is Not a Substitute for a Valid Exclusion Request

In GEICO's August 2 letter refusing to speak to Defendants, GEICO did not defend the compliance of its July 11 letter with the Class Notice.  *See* Ex. C.  Nor did GEICO offer a reason for GEICO's lack of compliance.  *See id*.  Instead, GEICO pointed to GEICO's July 11 letter and "its Complaint" as "unambiguous proof of GEICO's intent to opt out of the Round 3

Settlements." *Id.* "As to any other issues . . . , GEICO points Defendants to the allegations in its . . . Complaint." *Id.* Although courts have certain flexibility to excuse, for example, a technical failure by a putative class member in meeting a court's exclusion procedures, courts in the Sixth Circuit have required that an alternative expression of exclusion must still provide the information otherwise required by the court's specified procedures. *See Frost v. Houshold Realty Corp.*, 61 F. Supp. 3d 740, 748 (S.D. Oh. 2004) (holding that expression of desire to be excluded that did not comply with additional requirements, such as "information identifying the loan or loans, such as the loan number, date of loan, amount of load, and address of the property" did not "sufficiently contain[] the required exclusionary information" required by the court-approved notice).

Here, GEICO's Round 3 Complaint does not identify any new vehicle that GEICO purchased. Nor does it identify any replacement part transactions. In alleging the aggregate numbers of its spending, GEICO conflates purchases with reimbursements for the apparent purpose of hiding how small its purchases actually are. For the same reasons as in *Frost*, GEICO's complaint is therefore not a substitute for compliance with the Court's clear and unambiguous requirements in the Class Notice. *See id.* ("[R]easonableness standard is not satisfied where party notified of a class settlement agreement and opt-out period choose to file a lawsuit which only nominally fulfills the requirements of a detailed Request for Exclusion.").

* * *

For each of these reasons, GEICO's exclusion request is invalid. GEICO's failure was not neglect, let alone excusable neglect. GEICO remains a Class Member and is bound by each Defendant's Settlement Agreement for GEICO's purchases within the individual Class Definitions of (i) parts manufactured or sold by that Defendant or its alleged co-conspirators, or

(ii) purchases of new vehicles containing those parts.  And, even if the Court were otherwise inclined to give GEICO's request a broader effect on other Class Members, GEICO's invalid request means it can have no effect on anyone else.

## III.   THE COURT SHOULD ENFORCE THE LITIGATION STAYS

One of the benefits of the bargain that each Defendant obtained in its Settlement Agreement was not to have to defend claims on the merits brought by Class Members who did not opt out or by a third party asserting Released Claims of other Class Members.  Unless and until GEICO is held to have validly opted out *and* validly opted out other Class Members, the Court should enforce the existing litigation stays in each Preliminary Approval Order to protect Defendants from expending any further time or resources on GEICO's Round 3 Complaint, including responding to GEICO's recent request for Defendants to waive service.  Upon entry of the Final Judgment, all Class Members who did not timely and validly opt out will be permanently enjoined and no entity will be permitted to bring their Released Claims against any Releasee, including each Defendant.  Until that time, enforcement of the stay is necessary to protect Defendants and save the Court from needless proceedings.

Under the All Writs Act, this Court is empowered to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651 (2018); *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 842-43 (6th Cir. 2009).  Injunctions or stays of other litigation are particularly appropriate where a "federal case involves a complex class settlement.'"  *Lorillard Tobacco*, 589 F.3d at 848 (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001)).  An injunction or stay against other proceedings is proper under the All Writs Act where "necessary or appropriate in aid of [the Court's] jurisdiction."  28 U.S.C. § 1651; *see also Lorillard Tobacco*, 589 F.3d at 843.  As such, an All Writs Act stay or injunction need not satisfy

the ordinary requirements for a preliminary injunction under the Federal Rules of Civil Procedure. *In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338-39 (2d Cir. 1985).

District courts presiding over complex multidistrict litigation regularly issue injunctions or stays to protect their jurisdiction and prevent parallel proceedings from thwarting "the orderly resolution of the federal litigation" accomplished through substantial efforts by the court to manage an MDL proceeding and related settlements. *See In re Inter Op Hip Prosthesis Prod. Liability Litig.*, 174 F. Supp. 2d 648, 653-56 (N.D. Ohio 2001) (internal quotation marks omitted).[23] Most of these cases involve a federal court enjoining parallel state court proceedings. It is even more straight-forward for this Court to enforce litigation stays where the parallel case is pending before the Court itself.

For these same reasons, each of this Court's Preliminary Approval Orders provided that "[t]he litigation against Releasees . . . is stayed except to the extent necessary to effectuate the Settlement Agreement." *See, e.g.*, Preliminary Approval Order, AVRP Docket, ECF No. 164. ¶ 6. GEICO should not be permitted to continue to prosecute its Round 3 Complaint (and thereby burden Defendants and deny them a benefit of the bargain underlying each Settlement), until this Court has ruled on Defendants' motion to deny the validity and effectiveness of

---

[23] *See also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104 (3d Cir. 2002); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d at 241; *In re Baldwin-United Corp.*, 770 F.2d at 335-42; *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d 876, 881 (M.D. Tenn. 2000); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 36 (E.D.N.Y. 1990).

GEICO's exclusion request.  Defendants therefore request that the Court enforce the existing litigation stays against GEICO and its Round 3 Complaint.[24]

## CONCLUSION

For the foregoing reasons, Defendants request a ruling that GEICO has not validly excluded itself, any of its affiliates, or any other Class Members from any of the Classes or Settlement Agreements.  Defendants further request that the Court enforce its stays of litigation against GEICO.

Dated:  August 13, 2018                          Respectfully Submitted,

 */s/ Maureen T. Taylor*
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY & TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com
        *And*

 */s/ Anita F. Stork (w/consent)*
Anita F. Stork
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA, 94102
Tel: 415-591-6000
Fax: 415-955-6091
Email: astork@cov.com

*Counsel for Alps Electric Co., Ltd.; Alps Electric (North America), Inc.; and Alps Automotive, Inc.*

---

[24] Defendants reserve all defenses to both the current Round 3 Complaint and to any amended complaint that GEICO may file, including the right to enforce the Final Judgments against GEICO if GEICO pursues Released Claims.

  /s/ Michael A. Rubin (w/consent)
James L. Cooper
Michael A. Rubin
Adam Pergament
Matthew Oster
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
james.cooper@arnoldporter.com
michael.rubin@arnoldpoerter.com
adam.pergament@arnoldporter.com
matthew.oster@arnoldporter.com

Fred K. Herrmann (P49519)
Joanne G. Swanson (33594)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Yamashita Rubber Co., Ltd. and YUSA Corporation*

  /s/ Barry A. Pupkin (w/consent)
Barry A. Pupkin
Jeremy W. Dutra
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Barry.Pupkin@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Defendants Aisan Industry Co., Ltd., Aisan Corporation of America, Franklin Precision Industry, Inc., and Hyundam Industrial Co., Ltd.*

  /s/ George A. Nicoud III (w/consent)
George A. Nicoud III

38

Joshua D. Dick
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission St., Ste. 3000
San Francisco, CA 94105
Tel: (415) 393-8200
Fax: (415) 374-8451
TNicoud@gibsondunn.com
JDick@gibsondunn.com

*Counsel for ALPHA Corporation and Alpha
Technology Corporation*


  */s/ John Roberti (w/consent)*
John Roberti
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

*Counsel for Defendants Robert Bosch GmbH and
Robert Bosch LLC*


  */s/ Steven A. Reiss (w/consent)*
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
Kaj Rozga
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

39

lara.trager@weil.com
kaj.rozga@weil.com

*Counsel for Defendants Bridgestone Corporation and Bridgestone APM Company*

  /s/ Steven A. Reiss (w/consent)
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com

*Counsel for Defendants Calsonic Kansei Corporation and CalsonicKansei North America, Inc.*

  /s/ Michael Martinez (w/consent)
Michael Martinez
Steven Kowal
Molly K. McGinley
Lauren Norris Donahue
**K&L GATES LLP**
70 W. Madison St., Suite 3100
Chicago, IL 60602
Phone: 312-807-4404
Fax: 312-827-8116
michael.martinez@klgates.com
steven.kowal@klgates.com
molly.mcginley@klgates.com
lauren.donahue@klgates.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
Amanda M. Fielder (P70180)
**WARNER NORCROSS & JUDD LLP**
2000 Town Center, Suite 2700
Southfield, MI 48075-1318

Phone: 248-784-5000
wjansen@wnj.com
mbrady@wnj.com
afielder@wnj.com

*Counsel for Chiyoda Manufacturing Corporation
and Chiyoda USA Corporation*

 /s/  Ronald M. McMillan (w/consent)
John J. Eklund (OH 0010895)
Maura L. Hughes (OH 0061929)
Ronald M. McMillan (OH 0072437)
Alexander B. Reich (OH 0084869)
**CALFEE, HALTER & GRISWOLD LLP**
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
jeklund@calfee.com
mhughes@calfee.com
rmcmillan@calfee.com
areich@calfee.com

Maureen T. Taylor
Herbert C. Donovan
**BROOKS, WILKINS, SHARKEY & TURCO
PLLC**
401 South Old Woodward, Suite 400
Birmingham, MI 48009
(248) 971-1800 (Phone)
(248) 971-1801 (Fax)
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendant Continental Automotive
Systems, Inc., Continental Automotive Electronics,
LLC, and Continental Automotive Korea Ltd.*

 /s/  Abram J. Ellis (w/consent)
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
900 G Street NW
Washington, DC 20001

41

Telephone: 202-636-5500
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
gwang@stblaw.com
smcgovern@stblaw.com

*Counsel for Defendants Diamond Electric Mfg. Co.,
Ltd. and Diamond Electric Mfg. Corp.*


  */s/ Michael F. Tubach (w/consent)*
Michael F. Tubach
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8876
Facsimile: (415) 984-8701
mtubach@omm.com

*Counsel for Defendants Eberspächer Exhaust
Technology GmbH & Co. KG, Eberspächer North
America, Inc., MAHLE Behr GmbH & Co. KG, and
MAHLE Behr USA Inc.*


  */s/ Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
Cale A. Johnson (P78032)
Cody D. Rockey (P78653)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
cjohnson@dykema.com
crockey@dykema.com

Jeremy J. Calsyn

42

Tara L. Tavernia
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
ttavernia@cgsh.com

*Counsel for Faurecia Abgastechnik GmbH,*
*Faurecia Systèmes d'Échappement, Faurecia*
*Emissions Control Technologies, USA, LLC and*
*Faurecia Emissions Control Systems, N.A., LLC*


  /s/ Craig S. Seebald (w/consent)
Craig S. Seebald
Alden L. Atkins
Lindsey Vaala
Ryan Will
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., NW
Suite 500 – West
Washington, DC 20037
(202) 639-6500 (Telephone)
(202) 879-8995 (Facsimile)
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com
rwill@velaw.com

*Attorneys for Hitachi Automotive Systems, Ltd.*


  /s/ A. Paul Victor (w/consent)
A. Paul Victor
Jeffrey L. Kessler
David Greenspan
James F. Lerner
Elizabeth A. Cate
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
(212) 294-4616
PVictor@winston.com

43

JKessler@winston.com
DGreenspan@winston.com
JLerner@winston.com
ECate@winston.com

*Attorneys for Defendants Hitachi Metals, Ltd.,*
*Hitachi Cable America Inc.,*
*and Hitachi Metals America, Ltd.*


 */s/ Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
Cale A. Johnson (P78032)
Cody D. Rockey (P78653)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
cjohnson@dykema.com
crockey@dykema.com

*Counsel for INOAC Corporation, INOAC Group*
*North America, LLC, and INOAC USA Inc.*


 */s/ Heather P. Lamberg (w/consent)*
Heather P. Lamberg
Keith R. Palfin
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, DC 20006
Phone: (202) 228-5000
Fax: (202) 202-5100
HLamberg@winston.com
KPalfin@winston.com

Cristina M. Fernandez
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Phone: (212) 294-6700
Fax: (212) 294-4700
CFernandez@winston.com

44

*Attorneys for Defendants JTEKT Corporation,*
*JTEKT Automotive North America, Inc., and*
*JTEKT North America Corp., formerly*
*d/b/a Koyo Corporation of U.S.A.*


 /s/ Sheldon H. Klein (w/consent)
Sheldon H. Klein (P41062)
**BUTZEL LONG**
41000 Woodward Avenue
Stoneridge West
Bloomfield Hills, MI 48304
248-258-1414
klein@butzel.com

Richard S. Snyder, Sr.
Freshfields Bruckhaus Deringer US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
202-777-4565
Richard.snyder@freshfields.com

*Attorneys for Kiekert AG and Kiekert USA Inc.*


 /s/ Franklin R. Liss  (w/consent)
Franklin R. Liss
Matthew Tabas
Emily J. Blackburn
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
frank.liss@arnoldporter.com
matthew.tabas@arnoldporter.com
emily.blackburn@arnoldporter.com

 /s/ Howard B. Iwrey  (w/consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700

45

Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

Counsel for Defendants Koito Manufacturing Co.,
Ltd. and North American Lighting, Inc.


  /s/ George A. Nicoud III (w/consent)
George A. Nicoud III
Rachel S. Brass
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel: (415) 393-8200
TNicoud@gibsondunn.com
RBrass@gibsondunn.com

Michael R. Dezsi
**DETTMER & DEZSI PLLC**
615 Griswold Street, Suite 1600
Detroit, Michigan 48226
Tel: (313) 879-1206
mdezsi@Dezsilaw.com

*Counsel for Defendants MITSUBA Corporation and
American Mitsuba Corporation*


  /s/ Kenneth R. Davis II (w/consent)
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
Hans N. Huggler
**LANE POWELL PC**
MODA Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone: 503.778.2100
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com
hugglerh@lanepowell.com

Larry S. Gangnes
Heidi B. Bradley
**LANE POWELL PC**
U.S. Bank Centre
1420 Fifth Avenue, Suite 4200
PO Box 91302
Seattle, WA  98111-9402
Telephone: 206.223.7000
gangnesl@lanepowell.com
bradleyh@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 West Big Beaver, Suite 600
Troy, MI 48084
Telephone: 248.528.1111
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Nachi-Fujikoshi Corp.*
*and Nachi America Inc.*

*/s/ Stefan M. Meisner (w/consent)*
Stefan M. Meisner (DC Bar No. 467886)
Daniel G. Powers (DC Bar No. 997749)
Emre N. Ilter (DC Bar No. 984479)
Lisa A. Peterson (DC Bar No. 1020986)
**McDERMOTT WILL & EMERY, LLP**
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile:  (202) 756-8087
smeisner@mwe.com
dgpowers@mwe.com
eilter@mwe.com
lpeterson@mwe.com

James C. Thomas (P23801)
**O'REILLY RANCILIO, P.C.**
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
586-726-1000

47

jthomas@orlaw.com

*Counsel for NGK Insulators, Ltd. and
NGK Automotive Ceramics USA, Inc.*

  */s/ John M. Majoras (w/consent)*
John M. Majoras
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel:  (202) 879-7652
jmajoras@jonesday.com

Eric P. Enson
**JONES DAY**
555 South Flower St., 50th Floor
Los Angeles, CA 90071
Tel:  (213) 489-3939
epenson@jonesday.com

Stephen J. Squeri
**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Tel:  (216) 586-7237
sjsqueri@jonesday.com

Ellen L. Maxwell-Hoffman
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, WV 25301
Tel:  (304) 347-1186
emaxwell@bowlesrice.com

*Attorneys for Defendants  NGK Spark Plug Co.,
Ltd. and NGK Spark Plugs (U.S.A.), Inc.*

  */s/ Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0526
hiwrey@dykema.com

48

*And*

  /s/ Rachel J. Adcox (w/consent)
Rachel J. Adcox
**AXINN**
950 F Street NW
Washington, DC 20004
(202) 721-5406
radcox@axinn.com

John M. Tanski
90 State House Square, 9th Fl.
Hartford, CT 06103
(860) 275-8175
jtanski@axinn.com

Nicholas E.O. Gaglio
114 West 47th Street
New York, NY 10036
(212) 728-2228
ngaglio@axinn.com

*Counsel for Nishikawa Rubber Co. Ltd.*

  /s/  Millicent Lundburg (w/consent)
J. David Rowe
Millicent Lundburg
**DUBOIS, BRYANT & CAMPBELL, LLP**
Colorado Tower
303 Colorado, Suite 2300
Austin, Texas  78701
(512) 457-8000
(512) 457-8008 (fax)
drowe@dbcllp.com
mlundburg@dbcllp.com

*Attorneys for Defendants Sanden Automotive
Components Corp.; Sanden Automotive Climate
Systems Corp.; and Sanden International (USA),
Inc.*

  /s/ Debra H. Dermody (w/consent)
Debra H. Dermody
Michelle A. Mantine

49

**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3302/4268
Fax: (412) 288-3063
ddermody@reedsmith.com
mmantine@reedsmith.com
   *And*

/s/ *Howard B. Iwrey (w/consent)*
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0526
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendant SKF USA Inc.*

 /s/ *Abram J. Ellis (w/consent)*
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
900 G Street NW
Washington, DC 20001
Telephone: 202-636-5500
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
gwang@stblaw.com
smcgovern@stblaw.com

*Counsel for Defendants Stanley Electric Co., Ltd.,
Stanley Electric U.S. Co., Inc., and II Stanley Co.,
Inc.*

50

 /s/ James H. Mutchnik (w/consent)

James H. Mutchnik
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2350
james.mutchnik@kirkland.com

Eliot A. Adelson
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1413
Facsimile: (415) 439-1313
eliot.adelson@kirkland.com

Catie Ventura
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street,  N.W
Washington, D.C. 20005-5793
Telephone: (202) 879-5907
Facsimile: (202) 879-5200
catie.ventura@kirkland.com

Joanne Geha Swanson
Fred K. Herrmann
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Fax: (313) 961-0388
Email: jswanson@kerr-russell.com
         fherrmann@kerr-russell.com

*Counsel for Tenneco Inc.; Tenneco Automotive
Operating Co., Inc.; and Tenneco GmbH*

 /s/ David C. Giardina (w/consent)

David C. Giardina
Kevin M. Fee
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL  60603
312-853-7000
dgiardina@sidley.com

kfee@sidley.com
*And*

 */s/ Bradley J. Schram (w/consent)*
Bradley J. Schram
MI Bar # P26337
**HERTZ SCHRAM PC**
1760 S. Telegraph Road
Suite 3000
Bloomfield Hills, MI  48302
Tel.:  (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Attorneys for Defendants Toyo Tire & Rubber Co.,*
*Ltd., Toyo Automotive Parts (USA), Inc., and*
*Toyo Tire North America OE Sales LLC*


*/s/ Thomas G. McNeill (w/consent)*
Thomas G. McNeill (P36859)
L. Pahl Zinn (P57516)
Max A. Aidenbaum (P78793)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Ste 4000
Detroit, Michigan 48226
313.223.3500
tmcneill@dickinsonwright.com
pzinn@dickinsonwright.com
maidenbaum@dickinsonwright.com

*Attorneys for Usui Kokusai Sangyo Kaisha, Ltd.*
*and Usui International Corporation*


 */s/ Brian Byrne (w/consent)*
Brian Byrne
**CLEARY GOTTLIEB STEEN & HAMILTON**
**LLP**
2000 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com

*Attorney for Valeo S.A.*

52

 _/s/ Donald M. Barnes (w/consent)_

Donald M. Barnes
Molly S. Crabtree
Ryan L. Graham
**PORTER WRIGHT MORRIS & ARTHUR LLP**
1900 K Street, NW, Suite 1110
Washington, D.C.  20006
(202) 778-3000
(202) 778-3063 (fax)
dbarnes@porterwright.com
mcrabtree@porterwright.com
rgraham@porterwright.com

*Attorneys for Defendants Yamada Manufacturing Co., Ltd. and Yamada North America, Inc.*

## CERTIFICATE OF SERVICE

On this 13th Day of August 2018, the undersigned caused a copy of the foregoing Defendants' Motion To Deny GEICO's Exclusion Request as Invalid and Ineffective and to Enforce Litigation Stays, Brief in Support, and Exhibits Thereto to be served on all ECF participants via the Court's ECF system.

In addition, on this 13th Day of August 2018, attorney Michael A. Rubin of the law firm of Arnold & Porter Kaye Scholar LLP caused a copy of the foregoing to be served by both electronic mail and First Class, U.S. Mail on the following non-ECF participant:

Diane Hazel
Lewis Roca Rothgerber Christie LLP
1200 17th Street, Suite 3000
Denver, Colorado  80202-5855
dhazel@lrrc.com

*Counsel for GEICO Corporation and Its Affiliates*

 */s/ Maureen T. Taylor*