# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | No. 12-md-02311<br>Hon. Marianne O. Battani |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Occupant Safety Systems | : | Case No. 2:12-cv-00603 |
| In Re: Switches | : | Case No. 2:13-cv-01303 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: Steering Angle Sensors | : | Case No. 2:13-cv-01603 |
| In Re: Electric Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Valve Timing Control Devices | : | Case No. 2:13-cv-02503 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Automotive Constant Velocity Joint Boot Products | : : | Case No. 2:14-cv-02903 |
| In Re: Automotive Hoses | : | Case No. 2:15-cv-03203 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Power Window Switches | : | Case No. 2:16-cv-03903 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Side-Door Latches | : | Case No. 2:17-cv-04303 |
| | : : : : : : : : : : | |
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | : : | |

# END-PAYOR PLAINTIFFS' MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 4 SETTLEMENTS AND <u>APPROVING THE PLAN OF ALLOCATION</u>

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), End-Payor Plaintiffs ("EPPs") respectfully move the Court for Orders: (1) finally approving the settlements between EPPs and seventeen additional settling defendants ("Round 4 Settlements"); (2) granting final certification, pursuant to Rules 23(b)(2), with two exceptions, and 23(b)(3) as to each of the settlement classes included in the Round 4 Settlements, which were previously provisionally certified by the Court for settlement purposes only; (3) confirming the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 4 Settlement Classes; and (4) approving the Plan of Allocation, which is substantially similar to the Plan previously approved by the Court in connection with the first three rounds of settlements, *see Auto Parts Master Docket*, 2:12-md-02311, ECF No. 1473, *Wire Harnesses*, 2:13-cv-00103, ECF No. 577, *Wire Harnesses*, 2:13-cv-00103, ECF No. 628.

Dated: October 30, 2019        Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
William V. Reiss
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
wreiss@robinskaplan.com
nfeigenbaum@robinskaplan.com

*/s/ Adam Zapala*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200

2

Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com


*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, Floor 32
New York, New York 10019
Telephone: (212) 729-2010
sshepard@susmangodfrey.com

*Interim Co-Lead Class Counsel for the
Proposed End-Payor Plaintiff Classes*

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : <br> : <br> : | No. 12-md-02311 <br> Hon. Marianne O. Battani |

| | | |
|---|---|---|
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Occupant Safety Systems | : | Case No. 2:12-cv-00603 |
| In Re: Switches | : | Case No. 2:13-cv-01303 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: Steering Angle Sensors | : | Case No. 2:13-cv-01603 |
| In Re: Electric Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Valve Timing Control Devices | : | Case No. 2:13-cv-02503 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Automotive Constant Velocity Joint Boot Products | : <br> : | Case No. 2:14-cv-02903 |
| In Re: Automotive Hoses | : | Case No. 2:15-cv-03203 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Power Window Switches | : | Case No. 2:16-cv-03903 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Side-Door Latches | : | Case No. 2:17-cv-04303 |

| | |
|---|---|
| THIS DOCUMENT RELATES TO: <br> End-Payor Actions | : <br> : |

## END-PAYOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 4 SETTLEMENTS AND APPROVING THE PLAN OF ALLOCATION

## Statement of Issues

1.  Whether the settlements between End-Payor Plaintiffs ("EPPs") and seventeen additional settling defendants ("Round 4 Settlements") are fair, reasonable, and adequate, and should be granted final approval under Federal Rule of Civil Procedure 23?

    Yes.

2.  Whether the Court should grant final certification of the settlement classes provided for by the Round 4 Settlements, which it previously conditionally certified?

    Yes.

3.  Whether the Court should confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 4 Settlement Classes?

    Yes.

4.  Whether the Court should approve EPPs' Plan of Allocation where the Court previously approved a substantially similar Plan of Allocation in connection with the first three rounds of settlements, *see* Order Granting End-Payor Plaintiffs' Amended Motion for Approval of Plan of Allocation of Settlement Proceeds, *Auto Parts Master Docket*, 2:12-md-02311, ECF No. 1473; Order Granting End-Payor Plaintiffs' Plan of Allocation of the Settlements, 2:13-cv-00103, ECF No. 577; and Order Granting Final Approval To the Round 3 Settlements, 2:13-cv-00103, ECF No. 628?

    Yes.

**<u>Controlling or Most Appropriate Authorities</u>**

- *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

- *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 717519, at *6 (E.D. Mich. Feb. 22, 2011)

- *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *4 (E.D. Mich. Oct. 18, 2010)

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 5

I.     THE ROUND 4 SETTLEMENTS PROVIDE SUBSTANTIAL BENEFITS TO EPPS .......................................................................................................... 5

     A.    Cash Components of the Round 4 Settlements ................................................ 5

     B.    Cooperation and Other Terms of the Round 4 Settlements ............................ 8

II.    THE JULY 2019 NOTICE PROGRAM WAS CARRIED OUT AND PROVIDED ADEQUATE NOTICE .............................................................. 10

III.   THE REACTION OF MEMBERS OF THE ROUND 4 SETTLEMENT CLASSES HAS BEEN POSITIVE ................................................................ 12

LEGAL STANDARD ................................................................................................ 13

ARGUMENT ............................................................................................................. 14

I.     THE ROUND 4 SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE AND SHOULD RECEIVE FINAL APPROVAL ............................. 14

     A.    The Likelihood of EPPs' Success on the Merits, Weighed Against the Relief Provided by the Round 4 Settlements, Supports Final Approval ............. 15

     B.    The Complexity, Expense, and Likely Duration of Litigation Favor Final Approval .................................................................................................... 18

     C.    The Judgment of Experienced Counsel Supports Approval ............................... 19

     D.    The Reaction of Class Members Weighs in Favor of Final Approval ............... 20

     E.    The Round 4 Settlements Are Consistent with the Public Interest ................... 21

     F.    The Round 4 Settlements Are the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel .................................. 22

     G.    The Round 4 Settlements Do Not Give Preferential Treatment to Named Plaintiffs While Providing Only Perfunctory Relief to Unnamed Class Members .................................................................................................... 22

II.    NOTICE OF THE ROUND 4 SETTLEMENTS SATISFIED RULE 23(E) AND DUE PROCESS ....................................................................................... 23

III.   WITH ONE EXCEPTION, THE CAFA NOTICE REQUIREMENT HAS BEEN SATISFIED BY EACH SETTLING DEFENDANT ............................ 25

IV.   THE COURT SHOULD CERTIFY THE ROUND 4 SETTLEMENT CLASSES ................................................................................................... 26

     A.    The Round 4 Settlement Classes Satisfy Rule 23(a) ........................................ 26

         1.    Numerosity .................................................................................................. 26

         2.    Commonality ............................................................................................... 27

|  |  | 3. | Typicality | 28 |
|  |  | 4. | Adequacy | 28 |
|  | B. | The Round 4 Settlement Classes Satisfy Rule 23(b)(3) | | 30 |
|  |  | 1. | Predominance | 30 |
|  |  | 2. | Superiority | 31 |
| V. | THE COURT SHOULD APPROVE THE REVISED PLAN OF ALLOCATION | | | 33 |
| | CONCLUSION | | | 35 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................................26, 30, 32

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,*
133 S. Ct. 1184 (2013)...........................................................................................31

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
789 F. Supp. 2d 935 (E.D. Ill. 2011)....................................................................35

*In re Auto. Refinishing Paint Antitrust Litig.,*
617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................................21

*In re Automotive Parts Antitrust Litigation,*
MDL No. 12-md-02311 ....................................................................................1, 28

*Bacon v. Honda of Am. Mfg., Inc.,*
370 F.3d 565 (6th Cir. 2004) ................................................................................27

*Beanie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007) ................................................................................30

*In re California Micro Devices Sec. Litig.,*
965 F. Supp. 1327 (N.D. Cal. 1997).....................................................................35

*In re Cardizem CD Antitrust Litig.,*
218 F.R.D. 508 (E.D. Mich. 2003) ..................................................13, 18, 21, 33

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981)................................................................................................14

*Cason-Merenda v. VHS of Mich., Inc.,*
296 F.R.D. 528 (E.D. Mich. 2013) .......................................................................30

*In re: Cathode Ray Tube (Crt) Antitrust Litig.,*
No. C-07-5944-SC, 2016 WL 3763382 (N.D. Cal. Feb. 29, 2016)......................33

*In re Chambers Dev. Sec. Litig.,*
912 F. Supp. 822 (W.D. Pa. 1995)........................................................................16

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
*Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)................................................18

*Date v. Sony Elecs., Inc.*,
   No. 07-cv-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ...........................................19

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ...................................................................................19

*Dick v. Spring Commc'ns*,
   297 F.R.D. 283 (W.D. Ky. 2014) ..............................................................................14, 20

*In re Dry Max Pampers Litigation*,
   724 F.3d 713 (6th Cir. 2013) ...................................................................................23

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ...................................................................................24

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012) ...............................................................................33

*In re Foundry Resins Antitrust Litig.*,
   242 F.R.D. 393 (S.D. Ohio 2007), *abrogated on other grounds by In re Behr
   Dayton Thermal Prod., LLC*, No. 3:08-CV-326, 2015 WL 13651286 (S.D.
   Ohio Feb. 27, 2015) .................................................................................... *passim*

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ...................................................................................27

*Grenada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) .................................................................................15

*Griffin v. Flagstar Bancorp, Inc.*,
   No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .........................13, 20, 27

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ...................................................................................24

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) ...................................................................................22

*Int'l Union, UAW v. Ford Motor Co.*,
   No. 05-cv-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ...........................................14

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ..........................................................................13, 14

*Law v. Nat'l Collegiate Athletic Ass'n*,
   108 F. Supp. 2d 1193 (D. Kan. 2000) ........................................................................34

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ..................................................................16

*Marcus v. Dep't of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002)...........................................................................29

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................................33

*In re Packaged Ice Antitrust Litig.*,
    No. 08-md-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................. *passim*

*Paper Sys. Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wis. 2000) .......................................................................32

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..........................................................................................24

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)..........................................................................34

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .............................................................................17

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) .............................................................................31

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
    825 F.3d 299 (6th Cir. 2017) .............................................................................15

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)..........................15, 20, 24

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990)...............................................................................21

*Taifa v. Bayh*,
    846 F. Supp. 723 (N.D. Ind. 1994) ....................................................................21

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)...............................................................................21

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) .........................................................13, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. 2010).......................................................................27

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ...................................................................13, 24

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ...........................................................26, 30, 31

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................35

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ....................................25

Class Action Fairness Act, 28 U.S.C. § 1715(b) ..........................................25

Class Action Fairness Act of 2005, 28 U.S.C. § 1715....................................26

**Rules**

Fed. R. Civ. P. 23 ................................................................... *passim*

Fed. R. Civ. P. 23(a) ..............................................................26, 27, 30

Fed. R. Civ. P. 23(a)(4)...................................................................28

Fed. R. Civ. P. 23(b) .....................................................................26

Fed. R. Civ. P. 23(b)(3)....................................................23, 30, 31, 32

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................24, 25

Fed. R. Civ. P. 23(e) .................................................................15, 23

Fed. R. Civ. P. 23(e)(1)...............................................................23, 25

Fed. R. Civ. P. 23(g)......................................................................29

**Other Authorities**

John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are
    Mostly Less than Single Damages*, 100 IOWA L. REV. 1997, 2010 (2015)..........................7, 18

THE LAW AND ECONOMICS OF CLASS ACTIONS 249 (James Langenfeld ed., 2014) ........................7

Manual for Complex Litigation (Fourth) § 21.311 ........................................24

## Introduction

Interim Co-Lead Counsel ("Class Counsel") for the End-Payor Plaintiffs ("EPPs") respectfully seek final approval of the settlements between EPPs and seventeen additional settling defendants ("Round 4 Settlements") in the above-captioned actions ("Actions").

The Round 4 Settlements collectively provide $183,958,000 in cash for the benefit of the settlement classes included in the Round 4 Settlements ("Round 4 Settlement Classes") and require 16 additional settling defendant families ("Round 4 Settling Defendants") to provide cooperation to the EPPs.[1] The Round 4 Settlements also provide that, with two exceptions, each of the Round 4 Settling Defendants will for a period of two years refrain from engaging in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue in the Actions.

The Round 4 Settlements are the product of Class Counsel's ongoing and very successful efforts to resolve the EPPs' claims against the Defendants in *In re Automotive Parts Antitrust Litigation*, MDL No. 12-md-02311 ("*Auto Parts Litigation*"). This Court previously granted EPPs' Motion for Final Approval of Settlements with Certain Defendants ("Round 1 Settlements"), *see, e.g.*, Amended Opinion and Order Granting Final Approval of Class Action Settlement, *Wire Harness*, 12-cv-00103, ECF No. 512 ("Round 1 Final Approval Order"), and EPPs' Motion for Orders Granting Final Approval of the Round 2 Settlements and Approving the Plan of Allocation in Connection with the Round 2 Settlements ("Round 2 Settlements"), *see, e.g.*, Order Granting Final Approval to the Round 2 Settlements, *Wire Harness*, 12-cv-00103, ECF No. 576 ("Round 2 Final Approval Order"), and EPPs' Motion for Orders Granting Final Approval of the Round 3

---

[1] Pursuant to a settlement with TKH reached in its bankruptcy proceeding, Class Counsel have secured a $53,200,000 authorized claim against TKH, but expect to receive only a small fraction of this amount for distribution to the class. Because the ultimate settlement amount in connection with the TKH settlement remains undetermined at this time, this figure was not included in Class Counsels' calculation of the total amount of the Round 4 settlement proceeds.

Settlements and Approving the Plan of Allocation in Connection with the Round 3 Settlements ("Round 3 Settlements"), *see, e.g.*, Order Granting Final Approval to the Round 3 Settlements, *Wire Harness*, 12-cv-00103, ECF No. 628 ("Round 3 Final Approval Order").

The Round 1 Settlements made available $224,668,350 in cash for the benefit of the settlement classes included in the Round 1 Settlements ("Round 1 Settlement Classes"). They also required the 11 Defendants that were parties to those settlements ("Round 1 Settling Defendants") to provide cooperation relevant to EPPs' ongoing claims against the remaining Defendants in those actions. In granting final approval of the Round 1 Settlements, the Court concluded that: (1) the Round 1 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 1 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 1 Final Approval Order at 15-26; 26-27.

The Round 2 Settlements made available $379,401,268 in cash for the benefit of the settlement classes included in the Round 2 Settlements ("Round 2 Settlement Classes"). They also required the Defendants that were parties to those settlements ("Round 2 Settling Defendants") to provide cooperation relevant to EPPs' ongoing prosecution of their claims against the remaining Defendants in those actions. In granting final approval of the Round 2 Settlements, the Court concluded that: (1) the Round 2 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 2 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 2 Final Approval Order at 8-23; 23-26.

The Round 3 Settlements made available $432,823,040 in cash for the benefit of the settlement classes included in the Round 3 Settlements ("Round 3 Settlement Classes"). They also required the Defendants that were parties to those settlements ("Round 3 Settling Defendants") to provide significant cooperation relevant to EPPs' ongoing prosecution of their claims against the

remaining Defendants in those actions. In granting final approval of the Round 3 Settlements, the Court concluded that: (1) the Round 3 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 3 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 3 Final Approval Order at 9-22.

As set forth below, the Round 4 Settlements likewise provide an excellent result for the Round 4 Settlement Classes, especially in light of the substantial risks of this massive and exceptionally complex litigation. In negotiating the Round 4 Settlements, Class Counsel[2] took into account the amounts of the respective Round 4 Settlements, available evidence supporting EPPs' claims, the relevant dollar volume of the commerce underlying the particular Round 4 Settling Defendant's conduct, the defenses that the Round 4 Settling Defendants raised or were expected to raise, and the substantial value provided by the Round 4 Settling Defendants' agreements to cooperate with EPPs in the continued prosecution of their claims against other defendants that had not yet settled. Class Counsel therefore respectfully submit that the proposed Round 4 Settlements are fair, reasonable, and adequate, and should be granted final approval.

Notice of the Round 4 Settlements was provided through the notice plan approved by the Court ("July 2019 Notice Program"). *See* Declaration of Shannon R. Wheatman, Ph.D. on Implementation of the July 2019 Notice Program ("Wheatman Decl."), ¶¶ 2, 5-17 & Ex. 3 (confirming that publication notice was given to potential class members in the manner approved by the Court and that Internet and television ads were likewise published in the manner approved by the Court); Declaration of Brian A. Pinkerton Regarding July 2019 Notice Dissemination and

---

[2] In granting preliminary approval of each of the Round 4 Settlements, the Court preliminarily appointed Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel. *See, e.g.*, Order Granting End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with Defendant Meritor and Provisional Certification of Settlement Class at ¶ 6, *Exhaust Systems*, 2:16-cv-03703, ECF. No. 120.

Settlement Administration ("Pinkerton Decl.") ¶¶ 17, 20-28 & Exs. A-E (confirming notice was mailed and/or emailed to potential class members previously registered and that notice was also sent to various lists of fleet owners and a rented list of consumers). The response from members of the Round 4 Settlement Classes has been positive. As of October 28, 2019, there have been no objections to, or requests for exclusion from, the Round 4 Settlements. *See* Pinkerton Decl. ¶¶ 30-31. As set forth in the July 2019 Notice Program, Round 4 Settlement Class Members have until November 19, 2019 to object to or request exclusion from the Round 4 Settlement Classes. *See, e.g.*, *Exhaust Systems*, 2:16-cv-03703, ECF No. 168.

To effectuate the Round 4 Settlements, it is also respectfully submitted that the Court grant final certification to the Round 4 Settlement Classes, which it has already provisionally certified for settlement purposes. The Round 4 Settlement Classes meet all of the requirements for certification as settlement classes and should be granted final certification. It is further requested that the Court confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 4 Settlement Classes.

Class Counsel also respectfully request that the Court approve the revised Plan of Allocation. This Plan of Allocation is substantially similar to EPPs' Plan of Allocation for the Round 1 Settlements, which the Court previously approved, ("Plan of Allocation Order") (*see Auto Parts Master Docket*, 2:12-md-02311, ECF No. 1473), for the Round 2 Settlements, which the Court also approved (*see, e.g.*, Order Granting End-Payor Plaintiffs' Plan of Allocation of the Settlements, 2:13-cv-00103, ECF No. 577), and for the Round 3 Settlements, which the Court also approved (*see, e.g.*, Order Granting Final Approval To the Round 3 Settlements, 2:13-cv-00103, ECF No. 628). EPPs respectfully request that, upon granting final approval of the Round 4 Settlements, the Court also enter Orders approving EPPs' Plan of Allocation in connection with

each of the Round 4 Settlements. The revised Plan of Allocation would provide for a minimum payment to authorized class member claimants, as the Court was previously advised. This revised Plan of Allocation would apply to all prior rounds of settlements in addition to the Round 4 Settlements.

## Background

### I.   The Round 4 Settlements Provide Substantial Benefits to EPPs

#### A.   Cash Components of the Round 4 Settlements

The Round 4 Settlements include seventeen defendant groups. The Round 4 Settling Defendants are: (1) Brose SchlieBsysteme GmbH & Co. Kommanditgesellschaft and Brose North America (collectively, "Brose"); (2) Corning International Kabushiki Kaisha and Corning Incorporated (collectively, "Corning"); (3) Delphi Technologies PLC, and Delphi Powertrain Systems, LLC (together, "Delphi"); (4) Green Tokai Co., Ltd. ("Green Tokai"); (5) Keihin Corporation and Keihin North America, Inc. (collectively, "Keihin"); (6) KYB Corporation (f/k/a Kayaba Industry Co., Ltd.) and KYB Americas Corporation (collectively, "KYB"); (7) Maruyasu Industries, Co., Ltd. and Curtis-Maruyasu America, Inc. (collectively, "Maruyasu"); (8) Meritor, Inc. f/k/a ArvinMeritor, Inc. ("Meritor"); (9) Mikuni Corporation ("Mikuni"); (10) Mitsubishi Heavy Industries, Ltd. and Mitsubishi Heavy Industries Climate Control, Inc. (collectively, "Mitsubishi Heavy"); (11) Panasonic Corporation and Panasonic Corporation of North America (together, "Panasonic"); (12) Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (collectively, "Sanoh"); (13) Showa Corporation and American Showa, Inc. (collectively, "Showa"); (14) the Reorganized TK Holdings Trust ("TKH") (15) Tokai Rika, Co. Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika"); (16) Toyo Denso Co., Ltd. and Weastec, Inc. (collectively, "Toyo Denso"); and (17) Toyoda Gosei Co., Ltd., Toyoda Gosei North America

Corp., TG Missouri Corp., TG Kentucky, LLC, TG Missouri Corp., and TG Fluid Systems USA Corp. (collectively, "Toyoda Gosei").

The Round 4 Settlements involve 20 automotive parts that EPPs contend were the subject of illegal bid rigging and price-fixing ("Settled Parts"). The Round 4 Settling Defendants, relevant case(s), and amounts of the Round 4 Settlements are set forth in the following chart:

| Auto Parts Round 4 Settlements and Settlement Funds | | |
|---|---|---|
| **Round 4 Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| Brose | Side-Door Latches | $2,280,000.00 |
| Corning | Ceramic Substrates | $26,600,000.00 |
| Delphi | Ignition Coils | $760,000.00 |
| Green Tokai | Body Sealing Products | $950,000.00 |
| Keihin | Fuel Injection Systems | $836,000.00 |
| KYB | Shock Absorbers | $28,880,000.00 |
| Maruyasu | Fuel Injection Systems | $108,699.85 |
| | Automotive Steel Tubes | $5,211,300.15 |
| Meritor | Exhaust Systems | $760,000.00 |
| Mikuni | Fuel Injection Systems | $2,675,200.00 |
| | Valve Timing Control Devices | $668,800.00 |
| Mitsubishi Heavy | Air Conditioning Systems | $6,840,000.00 |
| Panasonic | Air Conditioning Systems | $760,000.00 |
| Sanoh | Automotive Steel Tubes | $8,360,000.00 |
| Showa | Electric Powered Steering Assemblies | $4,133,735.39 |
| | Shock Absorbers | $9,926,264.61 |
| TKH | Occupant Safety Systems | $53,200,000.00 |
| Tokai Rika | Heater Control Panels | $1,366,578.08 |
| | Switches | $3,410,260.64 |
| | Steering Angle Sensors | $677,714.01 |
| | Occupant Safety Systems | $28,745,447.27 |
| Toyo Denso | Ignition Coils | $760,000.00 |
| | Power Window Switches | $4,408,000.00 |
| Toyoda Gosei | Occupant Safety Systems | $5,797,725.14 |
| | Automotive Constant Velocity Joint Boot Products | $716,505.10 |
| | Automotive Hoses | $5,428,166.52 |
| | Body Sealing Products | $27,148,653.36 |
| | Interior Trim Products | $5,089,493.68 |
| | Automotive Brake Hoses | $659,456.20 |
| | **Total (Excluding TKH)** | **$183,958,000.00** |

The Round 4 Settlement Classes are made up of 29 separate settlement classes. As part of each settlement negotiation, EPPs considered the available evidence regarding the Round 4 Settling Defendant's conduct as to each relevant class, to the extent available, the estimated dollar amount of commerce affected by that conduct, and the value of the other settlement terms (including the value of the cooperation offered by the Round 4 Settling Defendant). *See* Joint Declaration of Hollis Salzman, Adam J. Zapala, and Marc M. Seltzer in Support of End-Payor Plaintiffs' Motion for Orders Granting Final Approval of the Round 4 Settlements and Approving the Plan of Allocation ("Joint Decl.") ¶ 16, submitted herewith. In the opinion of Class Counsel, the Round 4 Settlements are an excellent result for the Round 4 Settlement Classes and are fair, reasonable, and adequate. *Id.* ¶¶ 18-19.

Given the complexity of the Actions and the barriers to final relief, the Round 4 Settlements provide substantial relief relative to the classes. In most instances, Class Counsel were able to take into account the dollar volume of commerce attributable to each defendant for those who pleaded guilty to a DOJ Indictment or Information, as well as the fines calculated based on that commerce pursuant to the United States Sentencing Commission Guidelines. In most instances, Class Counsel also obtained sales information from Defendants and third parties; academic studies regarding cartel overcharges and typical recovery, *see, e.g.*, John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less than Single Damages*, 100 IOWA L. REV. 1997, 2010 (2015) (analyzing successful antitrust recoveries); John M. Connor, *Cartel Overcharges*, in 26 THE LAW AND ECONOMICS OF CLASS ACTIONS 249, 290 (James Langenfeld ed., 2014); and expert analysis of likely damages, *cf.* Declaration of Janet S. Netz, Ph.D., in Support of Automobile Dealership and End-Payor Plaintiffs' Opposition to KYB Defendants' Motion for Summary Judgment on the Pass-Through Issue, *Shock Absorbers*, No. 15-cv-03303,

ECF No. 59-2. *See* Joint Decl. ¶¶ 15-16. Based on this information, Class Counsel believe that the settlements represent at least a substantial fraction of the overcharges suffered by EPPs. It should be noted that Defendants have contended that EPPs suffered no damages at all.

## B. Cooperation and Other Terms of the Round 4 Settlements

In addition to substantial cash payments (totaling $183,958,000), the Round 4 Settling Defendants (with one exception) are required to provide (and have already provided) EPPs with various forms of valuable cooperation. Those terms were described in EPPs' preliminary approval motions and are set forth at length in the written settlement agreements.[3] In general, the Round 4 Settling Defendants agreed to provide the following cooperation: (1) producing documents and other information relevant to EPPs' ongoing claims against the remaining Defendants who have not yet settled their cases ("the Non-Settling Defendants")[4] or those Defendants whose settlements do not receive final approval; (2) providing attorneys' proffers; (3) making witnesses available for interviews, depositions, and trial; (4) providing assistance in understanding information provided to EPPs; and (5) facilitating the use of information at trial. With two exceptions, Toyoda Gosei and TKH, the Round 4 Settling Defendants also agreed not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts.[5] *See, e.g.*, Settlement Agreement with Meritor at ¶ 28, *Exhaust Systems*, 2:16-cv-03703, ECF. No. 112-1.[6]

---

[3] All relevant documents are publicly available at www.autopartsclass.com.

[4] At this time, the only remaining Non-Settling Defendants are the members of the Bosal Defendant Group in the *Exhaust Systems* case, 2:16-cv-03703.

[5] Unless otherwise set forth herein, all defined terms shall have the meaning set forth in the respective settlement agreements.

[6] EPPs' settlements with Toyoda Gosei and TKH do not provide for injunctive relief. EPPs settlement agreements with these defendants, however, expressly provide that the release does not apply to, *inter alia*, claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *See, e.g.*, TKH Settlement Agreement ¶ 23.

This cooperation has proven extremely valuable to counsel for EPPs in pursuing claims against other defendants. *See* Joint Decl. ¶ 17.

In exchange for the cash payments, cooperation, and equitable relief described above, EPPs have agreed to release their claims against the Round 4 Settling Defendants and their affiliates (together, the "Releasees," who are further defined in the settlement agreements). However, the Round 4 Settlements will not affect the Non-Settling Defendants' joint and several liability for the Round 4 Settling Defendants' alleged wrongdoing. That is, each of the Round 4 Settling Defendants' sales remain in their respective cases, and, where otherwise applicable, the Non-Settling Defendants remain jointly and severally liable for the damages applicable to those sales after trebling, less only the amounts paid in settlement. *See, e.g.*, Settlement Agreement with Meritor at ¶ 54, *Exhaust Systems*, 2:16-cv-03703, ECF. No. 112-1 ("All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than Meritor and the other Releasees, for sales made by Meritor and Meritor's alleged illegal conduct are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. Meritor's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Meritor's and the other Releasees."). Thus, the Round 4 Settlements will not limit EPPs' right to recover the full amount of their damages from the Non-Settling Defendants, against whom EPPs continue to prosecute their claims.

The Round 4 Settlements are the product of lengthy arm's-length negotiations between counsel who are experienced in prosecuting and defending complex antitrust class action cases. Joint Decl. ¶ 12. The Round 4 Settlements were all negotiated over an extended period of time by

Class Counsel and counsel for the Round 4 Settling Defendants, through multiple in-person and telephonic meetings and correspondence. *See, e.g.*, *id*. A number of these negotiations were assisted by experienced mediators. *Id*. In preparation for these negotiations, Class Counsel undertook a diligent and thorough investigation of the legal and factual issues presented by this litigation. *Id.* ¶¶ 12, 15-19. Thus, Class Counsel were well informed as to the relevant facts and the strengths of EPPs' claims when the Round 4 Settlements were negotiated.

## II.    The July 2019 Notice Program Was Carried Out and Provided Adequate Notice

The Round 4 Settlements provide monetary and non-monetary benefits for members of the Round 4 Settlement Classes who: (1) purchased or leased a qualifying new Vehicle[7] in the U.S. (not for resale), which contains one or more of the Settled Parts; or (2) indirectly purchased one or more of the Settled Parts as a replacement part. The monetary benefits of the Round 4 Settlements will be made available to the members of the Round 4 Settlement Classes in the jurisdictions that allow EPPs to seek money damages or restitution.[8] Through a preeminent class action notice consultant, Kinsella Media, LLC ("Kinsella"), EPPs implemented the July 2019 Notice Program,[9]

---

[7] In general, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles"). *See, e.g.*, Settlement Agreement with Meritor at ¶ 17, *Exhaust Systems*, 2:16-cv-03703, ECF No. 112-1 ("'Vehicles' shall refer to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.").

[8] Those jurisdictions are: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[9] Pursuant to the Court's Orders, Kinsella previously implemented a notice program to provide notice of the Round 1 Settlements ("Combined Notice Program") to potential members of the Round 1 Settlement Classes, *see, e.g.*, Combined Notice Order, *Wire Harness,* 2:13-cv-00103, ECF No. 421, and notice of the Round 2 Settlements to potential members of the Round 2 Settlement Classes, *see, e.g.*, Order Granting End-Payor Plaintiffs' Unopposed Motion for Authorization to Disseminate September 2016 Notice and Claim Form to the End-Payor Plaintiffs Settlement Classes, *Wire Harness,* 2:13-cv-00103, ECF No. 535, and notice of the Round 3 Settlements to potential members of the Round 3 Settlement Classes, *see, e.g*., Order Granting

which the Court approved.[10] *See*, *e.g.*, *Heater Control Panels*, 2:12-cv-00403, ECF No. 291. Kinsella and Epiq—the successor to Garden City Group ("GCG"), the Court-appointed settlement administrator—implemented each element of the July 2019 Notice Program. *See* Wheatman Decl. ¶ 4; Pinkerton Decl. ¶¶ 17-28. The Court-approved July 2019 Notice Program included individual notice to potential members who had previously registered on the website and individual notice to people on rented consumer lists and other fleet lists. Pinkerton Decl. ¶¶ 24-28; Wheatman Decl. ¶¶ 8-9. The July 2019 Notice Program also included paid media (including published notice in national publications and Internet advertising), earned media, sponsored keywords with all major search engines, and continued use of and updates to the settlement website and toll-free telephone number. Wheatman Decl. ¶¶ 10-34 & Ex. 3. The July 2019 Notice Program was effective, reaching an estimated 70.1% of new Vehicle owners or lessees, with an average frequency of 2.3 times. *Id.* ¶¶ 18, 35.

Members of the Round 4 Settlement Classes can contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com, both of which are maintained by Epiq. *See* Pinkerton Decl. ¶¶ 3, 16, 19, 22. The website provides answers to frequently asked questions, important deadlines, a list of the Round 4 Settling Defendants, and access to important documents, such as the long form notice and relevant Court filings. *Id.* ¶¶ 3, 8, 16-18. The website contains a

---

EPPs' Unopposed Motion for Authorization to Disseminate March 2018 Notice to the End-Payor Plaintiffs Settlement Classes, *see, e.g., Wire Harness*, Case No. 2:12-cv-00103, ECF No. 601.

[10] In addition to approving the September 2016 Notice Program, the Court authorized Class Counsel to disseminate a Claim Form to potential members of the Round 1 and Round 2 Settlement Classes. *See Auto Parts Master Docket*, 2:12-md-02311, ECF No. 1473. The Court similarly authorized class Counsel to disseminate a Claim form to potential members of the Round 3 Settlement Classes. *See, e.g., Wire Harness*, Case No. 2:12-cv-00103, ECF No. 601. Potential members of the Round 4 Settlement Classes may submit claims electronically by completing the Claim Form online at www.AutoPartsClass.com or in paper form by downloading the form and completing and mailing it to Epiq. Pinkerton Decl. ¶¶ 7, 11, 14-16.

list of all of the vehicles known to be within any of the Round 4 Settlement Classes (apart from one vehicle list from one Defendant and a vehicle list for the TKH settlement that is subject to its bankruptcy proceeding). *Id.* ¶ 17 & n.2. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. *Id.* ¶ 16. As of October 28, 2019, the website had received 2,565,280 visits from 2,175,529 unique visitors. *Id.* ¶ 18. Epiq also sent an email notice to each of the 71,670 individuals who previously registered on the settlement website[11] and provided an email address and mailed a postcard notice to each of the 23,085 individuals who had previously registered on the settlement website but did not provide an email address. *Id.* ¶¶ 25-26. Epiq also sent postcard notice to 222,061 fleet companies on a purchased list of names and mailing addresses for registered fleet companies with ten or more registered vehicles. *Id.* ¶ 27. It also sent 9,610,672 email notices to potential settlement class members who purchased at least one vehicle included in the settlements during the class periods and who currently reside in one of the 30 states eligible for monetary compensation or the District of Columbia.[12] *Id.* ¶¶ 28.

## III.   The Reaction of Members of the Round 4 Settlement Classes Has Been Positive

The reaction of the members of the Round 4 Settlement Classes has been positive. Members of the Round 4 Settlement Classes have until November 19, 2019 to object to the Round 4 Settlements or Plan of Allocation or exclude themselves from the Round 4 Settlement Classes. As of October 28, 2019, Epiq has not received any: (1) objections to or requests for exclusion from the Round 4 Settlements, *id.* ¶¶ 30-31; or (2) objections to the Plan of Allocation, *id.* ¶ 31.

---

[11] The email alert was deliverable to 61,931 individuals. For all individuals for whom the email alert bounced back as undeliverable, Epiq mailed them a postcard notice. Pinkerton Decl. ¶¶ 25-26. 9,739 Email Notices could not be delivered. *Id.*
[12] As of October 28, 2019, 1,026,084 of these emails had been opened. Pinkerton Decl. ¶ 28.

All persons or businesses that purchased or leased one of the categories of Vehicles or replacement parts described in the Notice Programs[13] were placed on notice that they may be members of the Round 1, Round 2, Round 3, or Round 4 Settlement Classes, and that they are free to appear, object or exclude themselves as they choose.

## Legal Standard

"[T]he law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013). As a result, "the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole is fair, reasonable and adequate to all concerned." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal quotes omitted).

After preliminary approval, notice of the proposed settlement must be given to the settlement class members, and the court must hold a hearing before granting final approval. *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The ultimate question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted). In reaching that determination, the court has broad discretion to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel regarding the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297

---

[13] The July 2019 Notice Program is referred to collectively with the Initial Notice Program and the Combined Notice Program as the ("Notice Programs").

(W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation.").

Because a settlement represents an exercise of judgment by the negotiating parties, a court reviewing a settlement will not "substitute [its] judgment for that of the litigants and their counsel." *IUE-CWA*, 238 F.R.D. at 593 (quotations omitted). Nor will it "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Instead, courts evaluate the plaintiffs' recovery in light of the fact that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No. 05-cv-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006).

<u>**Argument**</u>

**I.    The Round 4 Settlements Are Fair, Reasonable, and Adequate and Should Receive Final Approval**

The Round 4 Settlements meet the criteria for final approval under Federal Rule of Civil Procedure 23. They provide meaningful benefits to the members of the Round 4 Settlement Classes, and they were reached after arm's-length negotiations between experienced counsel who had sufficient information about the merits of, and defenses to the claims asserted in the Actions. The Round 4 Settlements reflect a reasonable compromise in light of the procedural, liability, and damages questions facing both EPPs and the Round 4 Settling Defendants.

Courts in the Sixth Circuit consider the following factors when determining whether to grant final approval of a class action settlement: (1) the likelihood of success on the merits, weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and the class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent

class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 717519, at \*8 (E.D. Mich. Feb. 22, 2011). The district court has wide discretion in assessing the weight and applicability of these factors. *Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). Pursuant to Rule 23(e), the Court may approve a proposal that would bind class members if "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate," and "the proposal treats class members equitably relative to each other."

## A. The Likelihood of EPPs' Success on the Merits, Weighed Against the Relief Provided by the Round 4 Settlements, Supports Final Approval

Courts assess class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at \*15 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 594). "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Telectronics*, 137 F. Supp. 2d at 1013. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued to trial and judgment. *Sheick*, 2010 WL 4136958, at \*15. In answering that question, the district court "must carefully scrutinize whether the named plaintiffs and counsel have met their fiduciary obligations to the class and whether the settlement is fair, reasonable, and adequate." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 309 (6th Cir. 2017) (internal citations omitted).

EPPs believe they will prevail in the Actions. EPPs nonetheless recognize that success at trial is not guaranteed. Although EPPs believe they can prove the existence of Defendants' illegal

bid-rigging and price-fixing conspiracies, the Round 4 Defendants, represented by some of the leading law firms across the country, have vigorously defended these cases. Absent the Round 4 Settlements, the Round 4 Settling Defendants would oppose EPPs' motions for class certification, move for summary judgment on numerous issues, and raise defenses to EPPs' claims at trial, should the Actions proceed to trial. Even if EPPs successfully established the Round 4 Settling Defendants' violations of the law, the Round 4 Setting Defendants would offer expert testimony challenging the impact of their conduct and supporting their contention that the EPPs suffered no damages. EPPs would have to show that the Round 4 Settling Defendants' illegal overcharges were passed on through multiple levels of indirect purchasers. EPPs believe they would prevail on all of these issues at trial and that any recovery would be affirmed on appeal, but the Round 4 Settlements avoid the risks of further litigation and ensure a large recovery for members of the Round 4 Settlement Classes. Given these risks, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, the discovery cooperation that the Round 4 Settling Defendants have agreed to provide is a substantial benefit to the Round 4 Settlement Classes and "strongly militates toward approval" of the settlements. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). In addition, the agreement by all but two of the Round 4 Settling Defendants not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts provides value to the members of Round 4 Settlement Classes.[14]

While Class Counsel have consulted with their experts about damages issues in connection with the Round 4 Settlements, expert analysis of potential damages is not required in order to settle

---

[14] *See* footnote 6, *supra*.

a class action. *See* Newberg on Class Actions § 13:49 (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 517-18 (8th Cir. 2015) (holding that the district court could approve settlement without finding a specific value for expected recovery of class); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013) (rejecting objectors' argument "that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award" and holding that "[w]hile a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action. Not only would such a requirement be onerous, it would often be impossible— statutory or liquidated damages aside, the amount of damages a given plaintiff (or class of plaintiffs) has suffered is a question of fact that must be proven at trial. Even as to statutory damages, questions of fact pertaining to which class members have claims under the various causes of action would affect the amount of recovery at trial, thus making any prediction about that recovery speculative and contingent.")); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (rejecting the suggestion that a precise damages model is always required; noting that the requirement of an expert damages report "would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling"; and distinguishing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)).

Class Counsel consulted with their experts about damages issues, examining the dollar volume of commerce affected; the likely overcharges, *see* Connor, *Cartel Overcharges*, *supra* at 8, at 290 (identifying average overcharge of 20.2% of affected commerce for recent international

cartels); typical antitrust recoveries, *see* Connor & Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less than Single Damages*, *supra* at 8, at 2010 (finding a weighted average recovery of 19% of total cartel overcharges in successful antitrust actions); and damages issues unique to each case. *See* Joint Decl. ¶¶ 15-16. Class Counsel believe that the Round 4 Settlements, which reflect only a portion of the recoveries for the class in each parts case, compare favorably to other antitrust recoveries. *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. . . . In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Class Counsel believe that the Round 4 Settlements represent an excellent recovery for EPPs. Weighing the benefits of the Round 4 Settlements against the risks of continued litigation tilts the scale heavily toward final approval of the Round 4 Settlements.

**B. The Complexity, Expense, and Likely Duration of Litigation Favor Final Approval**

"Settlement should represent a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Cardizem*, 218 F.R.D. at 523 (quotation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

Antitrust cases are notoriously protracted and difficult to litigate. Given the complexity of the Actions, any final adjudicated recovery for the Round 4 Settlement Classes would almost certainly be years away. Should EPPs' claims proceed to trial, the trial would be expensive, time-consuming, and complex, and it would involve testimony from multiple expert witnesses. Moreover, given the high stakes of this litigation, a favorable trial outcome would most definitely

18

be contested on appeal. Each subsequent step in the litigation process would require the Round 4 Settlement Classes to incur additional expenses and risks without any assurance of a more favorable outcome than currently provided by the Round 4 Settlements.

This Court has had substantial opportunity to consider the claims and defenses raised in the *Auto Parts Litigation* and has recognized that complex antitrust litigation of this scope and magnitude has many inherent risks that can be extinguished through settlement. *See, e.g.*, Round 1 Final Approval Order at 13; Round 2 Final Approval Order at 10-11; Round 3 Final Approval Order at 14-15. The fact that EPPs achieved exceptional recoveries to date, which eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the members of the Round 4 Settlement Classes, supports final approval of the settlements. Upon final approval, the Round 4 Settlements would bring EPPs' total recovery to date in this litigation more than $1.2 billion—the largest indirect purchaser recovery in U.S history.

### C.  The Judgment of Experienced Counsel Supports Approval

"The Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class is entitled to significant weight, and supports the fairness of the class settlement." *Packaged Ice*, 2011 WL 717519, at *11 (quotation omitted). In a complex class action litigation such as this, the "Court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Date v. Sony Elecs., Inc.*, No. 07-cv-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quotation omitted); *see also Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arm's-length settlement negotiations, is appropriate." (quotation omitted)).

Class Counsel have decades of experience litigating antitrust class actions and other complex litigation. Similarly, defense counsel are some of the Nation's most experienced and skilled antitrust lawyers. Joint Decl. ¶¶ 9, 12. Class Counsel believe that each of the Round 4 Settlements provides an excellent result for the Round 4 Settlement Classes in light of the circumstances of each Round 4 Settling Defendant's alleged conduct and potential liability. *See id.* ¶¶ 18-19.

In determining whether the judgment of counsel supports final approval of the settlements, a court should consider the amount of discovery completed in the action. *Packaged Ice*, 2011 WL 717519, at *8, 11. There is no baseline required to satisfy this requirement; the "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *3 (quotation omitted). That standard is met here. Although formal discovery in each of the Actions has varied, when negotiating each of the Round 4 Settlements, Class Counsel reviewed documents produced by many Defendants, attended attorney proffers from certain cooperating Defendants, analyzed, where appropriate, the volume of commerce affected by the particular Round 4 Settling Defendant's conduct, and analyzed information from parties and non-parties concerning impact, overcharge, and pass-through. *See* Joint Decl. ¶ 7. This information allowed Class Counsel to evaluate the strengths and weaknesses of the claims and defenses asserted in the Actions and the benefits of the Round 4 Settlements. Thus, the judgment of Class Counsel supports final approval of the Round 4 Settlements. *See Sheick*, 2010 WL 4136958, at *18.

## D.  The Reaction of Class Members Weighs in Favor of Final Approval

The deadline for class members to object to the Round 4 Settlements or Plan of Allocation or to exclude themselves from the Round 4 Settlement Classes is November 19, 2019. *See*, *e.g.*, *Heater Control Panels*, 2:12-cv-00403, ECF No. 291. As of October 28, 2019, the website had received visits from 2,175,529 unique visitors, the automated toll-free helpline has received 34,222

calls totaling 190,563 minutes, and, Epiq has fielded 11,355 live calls from potential settlement class members. Pinkerton Decl. ¶¶ 18-19. Yet, as of October 28, 2019, Class Counsel have received no objections to the Round 4 Settlements or Plan of Allocation, or requests for exclusion from, any of the Round 4 Settlements. *Id.* ¶¶ 30-31.

The absence of any objections, to date, from members of the Round 4 Settlement Classes supports the adequacy of the Round 4 Settlements. *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class members); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class). To the extent any objections are received after the filing of this motion, Class Counsel will address those objections separately.

### E.  The Round 4 Settlements Are Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quotation omitted). The private enforcement of the antitrust laws is facilitated by the Round 4 Settlements, which will pay nearly two hundred million dollars to consumers and other end-payors.

**F. The Round 4 Settlements Are the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel**

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Packaged Ice*, 2011 WL 717519, at *12. The Round 4 Settlements here were reached after adversarial litigation and often contentious discovery. The negotiations leading to the Round 4 Settlements were conducted entirely at arm's length, in some instances before a neutral mediator, and often took many months of hard bargaining to arrive at agreements. *See* Joint Decl. ¶ 12. The Round 4 Settlements were negotiated in good faith, with counsel on each side zealously representing the interests of their clients.

**G. The Round 4 Settlements Do Not Give Preferential Treatment to Named Plaintiffs While Providing Only Perfunctory Relief to Unnamed Class Members**

As noted in End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees and Payment of Incentive Awards to Class Representatives In Conjunction with the Round Four Settlements, EPPs request that each remaining[15] named Plaintiff who participated in any of the End-Payor Plaintiff *Auto Parts* cases are requested to be awarded a single monetary award of $10,000 if that named Plaintiff appeared for a deposition in conjunction with these cases and $5,000 if the named Plaintiff did not appear for a deposition, but otherwise participated in discovery. Such awards are made to compensate the named plaintiffs for their services in pursuing a class action for the benefit of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (noting that "courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and awarding individual efforts taken on behalf of the class"). An incentive award of these modest amounts would neither give preferential treatment to named Plaintiffs nor result

---

[15] Named plaintiffs who were voluntarily dismissed from the case without prejudice would not receive any award.

in the provision of perfunctory relief to unnamed class members. Here, the requested incentive awards are reasonable given the time and resources the named Plaintiffs devoted to the case, including document productions, (in most cases) verified responses to written discovery requests, and (in most cases) deposition testimony. The two award levels are designed to compensate named Plaintiffs in a manner commensurate with the time they put into the case. Furthermore, the awards to the named Plaintiffs are not guaranteed and are left to the discretion of the Court.[16]

Moreover, absent or "unnamed" class members are not receiving merely "perfunctory" relief. *See In re Dry Max Pampers Litigation*, 724 F.3d 713, 721 (6th Cir. 2013) (expressing concern where unnamed class members received zero monetary relief and received only "illusory" injunctive relief while counsel received $2.37 million without "tak[ing] a single deposition, serv[ing] a single request for written discovery, or even fil[ing] a response to [defendant's] motion to dismiss"). Here, the incentive awards represent only 0.3% of the total Round 4 Settlement Funds with the balance of the net Settlement Funds going to the Settlement Classes.

## II.    Notice of the Round 4 Settlements Satisfied Rule 23(e) and Due Process

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*,

---

[16] EPPs discuss the justification for the requested incentive awards in more detail in their Brief In Support of an Award of Attorneys' Fees and Payment of Incentive Awards to Class Representatives In Connection with the Round Four Settlements, which is being filed on a similar timeframe as this brief.

472 U.S. 797, 812 (1985); *UAW*, 497 F.3d at 629. The "best notice practicable" standard does not require actual notice, nor does it require direct notice when class members' individual addresses are not readily available or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Manual for Complex Litigation (Fourth) § 21.311, at 288 (2004). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

The July 2019 Notice Program was multi-faceted and utilized multiple means of communication. The July 2019 Notice Program used both paid and earned media. Wheatman Decl. ¶¶ 10, 26. It included the following elements: (1) individual notice, *id.* ¶¶ 20-21; (2) extensive published notice in several national publications, *id.* ¶ 14; (3) online media efforts through targeted and Internet advertising on various websites, social media sites, and search engines, *id.* ¶¶ 15-16; (4) earned media efforts through a multimedia news release, press releases, and media outreach, *id.* ¶ 26; (5) television advertisements, *id.* ¶¶ 22-23 and (6) a dedicated settlement website, *id*. ¶¶ 8, 28. This notice program easily satisfied the requirements of Rule 23 and due process. *See Packaged Ice*, 2011 WL 717519, at *14; *Sheick*, 2010 WL 4136958, at *11-12.

In terms of content, the class notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quotation omitted). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting; and (7) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

That standard is met here. The Court previously approved the July 2019 Notice Program, which is substantially similar to—and in fact more extensive than—the Court-approved notice programs implemented in connection with the Round 1, Round 2, and Round 3 Settlements. *See* Round 1 Final Approval Order at 21 ("The Court finds that the [Round 1] Notice satisfied Rule 23(e)(1), in that it informed the class members of the nature of the pending actions, the terms of the settlement, and how to proceed to get more information."); *Wire Harness*, 2:12-cv-00103, ECF No. 535 (approving substantially similar notice of Round 2 Settlements); *Exhaust Systems*, 2:16-cv-03703, ECF No. 154 (approving substantially similar notice of Round 3 Settlements). The July 2019 Notice Program contained both a short and long form notice (together, "Notices"). The Notices were written in simple, plain language to encourage readership and comprehension, and no important information was omitted or missing. *See* Wheatman Decl. ¶ 32. The Notices provided substantial information, including background on the issues in the case, a description of the Plan of Allocation, and specific instructions for members of the Round 4 Settlement Classes to follow to properly exercise their rights, such as their right to opt out or to object to the Round 4 Settlements or Plan of Allocation. *See id.* ¶ 33.

## III.   With One Exception, the CAFA Notice Requirement Has Been Satisfied by Each Settling Defendant

The Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"), requires settling defendants to serve notice of a proposed settlement on the appropriate state and federal officials after a proposed class action settlement is filed with the court. 28 U.S.C. § 1715(b). All but one of the Round 4 Settling Defendants have provided Class Counsel with written notice that they have satisfied the CAFA notice requirement.[17] Joint Decl. ¶ 22.

---

[17] It recently came to Class Counsels' attention that the TKH Defendants inadvertently failed to fulfill their notice obligations under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## IV.    The Court Should Certify the Round 4 Settlement Classes

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified each of the Round 4 Settlement Classes. It is well-established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The settlement class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013). Previously, the Court gave final approval and certified the substantially similar settlement classes relating to the Round 1, Round 2, and Round 3 Settlements. *See* Round 1 Final Approval Order; Round 2 Final Approval Order; Round 3 Final Approval Order. The Court should reach the same result here.

### A.    The Round 4 Settlement Classes Satisfy Rule 23(a)

Rule 23(a) is satisfied if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *6. The Round 4 Settlement Classes met all of the requirements of Rule 23(a).

#### 1.    Numerosity

To establish numerosity, a class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d

---

Counsel for TKH has represented to Class Counsel that it will cause the requisite notice to be disseminated promptly. In order to ensure compliance with the statute, Class Counsel respectfully request that the Court delay entering final judgment with respect to the TKH Defendants until 90 days after the TKH Defendants cause the requisite notice to be disseminated. Any delay attendant to the TKH Defendants' oversight should have no impact on the timing of the Court's final approval of the other Round 4 Settlements.

950, 965 (6th Cir. 2005). Courts in the Sixth Circuit have recognized that "more than several hundred" class members can satisfy numerosity based simply on the number of potential litigants. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Here, there are many tens of thousands of members of the Round 4 Settlement Classes, including persons and entities, geographically distributed throughout the United States. Thus, joinder would be impracticable, and numerosity is easily present in the Actions.

### 2.    Commonality

Commonality requires only "one issue whose resolution will advance the litigation by affecting a significant number of the proposed class." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404 (S.D. Ohio 2007), *abrogated on other grounds by In re Behr Dayton Thermal Prod., LLC,* No. 3:08-CV-326, 2015 WL 13651286, at *4 (S.D. Ohio Feb. 27, 2015). "Price-fixing conspiracy cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged conspiracy." *Id.* at 405; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("Where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.") (internal citation omitted).

The following common questions of law and fact are present in these cases: (1) whether Defendants engaged in a conspiracy to rig bids, fix prices, or allocate the markets for the Settled Parts incorporated into Vehicles sold in the United States; (2) the duration of such illegal contracts, combinations, or conspiracies; (3) whether Defendants' conduct resulted in unlawful overcharges on the prices of the Settled Parts; and (4) whether such unlawful overcharges were passed on to EPPs. Under settled case law, any one of these issues would suffice to establish commonality. *See, e.g., Packaged Ice*, 2011 WL 717519, at *6 (commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful

conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). Accordingly, the commonality element is satisfied here.

### 3.      Typicality

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants." *Foundry Resins*, 242 F.R.D. at 405. In these cases, EPPs and the absent class members are all alleged victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for the Settled Parts. The same evidence will prove Defendants' liability, and whether Defendants' conduct resulted in unlawful overcharges to EPPs. *See Packaged Ice*, 2011 WL 717519, at *6 (holding that "even if there are factual distinctions among named and absent class members," typicality is met when "all Class Members' claims arise from the same course of conduct, *i.e.* a conspiracy to allocate markets in violation of the Sherman Act").

### 4.      Adequacy

Finally, the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the class representatives to "have common interests with unnamed members of the class" and to "vigorously prosecute the interests of the class through qualified counsel." *Foundry Resins*, 242 F.R.D. at 407.

There are no conflicts between EPP class representatives and the members of the Round 4 Settlement Classes because they all have the same interest in establishing liability as a result of their purchases or leases of Vehicles or purchases of replacement parts. *See Packaged Ice*, 2011 WL 717519, at *6 ("Plaintiffs' interests are aligned with the Class Members because they all possess the same interests and have suffered the same type of injury and the class is represented

by competent and experienced Class Counsel."). EPP class representatives and the members of the Round 4 Settlement Classes also share a common interest in obtaining the Round 4 Settling Defendants' cooperation in prosecuting the claims against the Non-Settling Defendants, as well as the injunctive relief obtained from virtually all of the Round 4 Settling Defendants.

Courts also must examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class under Federal Rule of Civil Procedure 23(g). *Foundry Resins*, 242 F.R.D. at 407. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the claims of the Round 4 Settlement Classes, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation."). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel on behalf of EPPs in all actions coordinated as part of the *Auto Parts Litigation*. Leadership Orders, *Auto Parts Master Docket*, 2:12-md-02311, ECF Nos. 65, 271. The Court also appointed these same firms as Settlement Class Counsel in each of the orders preliminarily approving the Settlement Agreements (s*ee, e.g.*, Order Granting Preliminary Approval of Settlement with DENSO at ¶ 7, *Wire Harness*, 2:12-cv-00103, ECF No. 534), and appointed them as Settlement Class Counsel in its order granting final approval of the Round 1 Settlements, Round 2 Settlements, and Round 3 Settlements. *See, e.g.*, Round 1 Final Approval Order at 26; Round 2 Final Approval Order at 25; Round 3 Final Approval Order at 21-22. For the same reasons, the Court should confirm their appointment as Settlement Class Counsel here.

### B.  The Round 4 Settlement Classes Satisfy Rule 23(b)(3)

In addition to the requirements of Rule 23(a) discussed above, common questions must predominate over questions affecting only individual class members, and a class action must be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

### 1.      Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). But plaintiffs need not "prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, predominance is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *Foundry Resins*, 242 F.R.D. at 408.

Common questions must predominate, but they do not have to be dispositive of the litigation. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 535 (E.D. Mich. 2013) (quotation omitted). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013).

Horizontal price-fixing cases are particularly well suited for class certification because proof of the conspiracy presents a common, predominating question. *See In re Scrap Metal*

*Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[P]roof of the *conspiracy* is a common question thought to predominate over the other issues of the case."); *Packaged Ice*, 2011 WL 717519, at *7 ("The allegations of market and customer allocation will not vary among the class members and issues regarding the amount of damages do not destroy predominance."). This is true even if there are individual state law issues, as long as the common issues still outweigh the individual issues—that is, if a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class action may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citations omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, the fact that damages calculation may involve individualized issues does not defeat predominance).

Here, the same sets of core operative facts and theories of liability apply to all the Round 4 Settlement Classes' claims. Whether the Settling Defendants entered into illegal agreements to artificially fix prices of the Settled Parts is a question common to all members of the Round 4 Settlement Classes because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, the Round 4 Settling Defendants violated the antitrust laws, and whether their acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If EPPs and the absent class members brought individual actions, they would each have to prove the same claims in order to establish liability. For settlement purposes, common issues predominate here.

### 2.      Superiority

In determining whether a class action is the superior method to employ, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Foundry Resins*, 242 F.R.D. at 411.

The *Auto Parts Litigation* has been centralized in this Court. As of October 28, 2019, no members of the Round 4 Settlement Classes have thus far requested exclusion from the Round 4 Settlement Classes. Thus, consideration of the factors listed in subsections (A), (B), and (C) demonstrates the superiority of the Settlement Classes. The last factor, meanwhile, is irrelevant because the potential difficulties in managing a trial are extinguished by the fact of settlement. *Amchem*, 521 U.S. at 620. In addition, the scope and complexity of the *Auto Parts Litigation*— and as a result, the cost to litigate these claims—is enormous. The Round 4 Settlement Classes are largely comprised of individual consumers who purchased or leased a new Vehicle or purchased a replacement part, none of whom could rationally be expected to spend the millions of dollars necessary to pursue their claims resulting from the unlawful overcharges. *See Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wis. 2000) ("Given the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."). Even if class members could afford individual litigation, however, that leaves the alternatives to the Settlement Classes as a multiplicity of separate lawsuits at high cost to the judicial system and private litigants, or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). Thus, certification of the Settlement Classes is superior to the alternatives in this litigation.

### V.    The Court Should Approve the Revised Plan of Allocation

On October 11, 2016, the Court granted EPPs' Amended Motion for Approval of Plan of

Allocation "to distribute all settlement funds as to which the Court has granted final approval,"

and "direct[ed] the EPPs to give notice of the Plan of Allocation to the Settlement Classes." *Auto*

*Parts Master Docket*, 2:12-md-02311, ECF No. 1473. On July 10, 2017, the Court further

approved EPPs' Plan of Allocation for Round 1 Settlements and Round 2 Settlements. *Wire*

*Harness*, 2:12-cv-00103, ECF No. 577. That same Plan of Allocation was approved for the Round

3 Settlements. *See, e.g.*, Order Granting Final Approval To the Round 3 Settlements, 2:13-cv-

00103, ECF No. 628 (referencing approved Plan of Allocation). On August 2, 2019, the Court

granted EPPs' Second Amended Unopposed Motion for Authorization to Disseminate July 2019

Notice to the End-Payor Plaintiffs Settlement Classes. *See*, *e.g.*, *Heater Control Panels*, 2:12-cv-

00403, ECF No. 291. The Revised Plan of Allocation filed with that motion is substantively similar

to the prior, approved plans of allocation and would apply to all prior settlement rounds. *See, e.g.*,

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2016 WL 3763382, at *12

(N.D. Cal. Feb. 29, 2016) (noting that "*de minimis* adjustments to a settlement allocation plan do

not typically raise fairness or due process concerns, or require extensive additional procedures" in

part because "[s]ettlement approval routinely involves such issues" and approving changes

involving re-allocation of approximately $2.8 million), *report and recommendation adopted in*

*part*, No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016), *dismissed sub nom. In re*

*Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2,

2017); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196, 1200 (D. Kan. 2000)

(approving a revised plan of allocation after noting that "[f]or practical purposes, the class-wide

plan of allocation cannot account for every individual circumstance" and noting that "[m]ost of

the objections to the revised plan of allocation either have been previously resolved or raise issues

that were vigorously litigated at earlier stages of the litigation"). Since EPPs' Plan of Allocation for the Round 4 Settlements is substantially similar to the Plan previously approved for the Round 1, Round 2, and Round 3 Settlements, EPPs request that the Court again approve this Plan.

The only notable change to the revised plan of allocation is the following:

> This *pro rata* allocation will be modified by initially distributing $100 (the Minimum Payment Amount) to all Authorized Claimants, and then distributing the remaining funds to Authorized Claimants on a classwide basis whose weighted *pro rata* allocation exceeds $100 (subject to their being sufficient funds for each Authorized Claimant to receive at least $100). If the net settlement funds are insufficient to allow a minimum payment of $100 to each Authorized Claimant, the amount to be paid to all Authorized Claimants shall be adjusted so that claimants share in the net settlement funds on a *pro rata* basis based on the amounts of their respective net allowed claim amounts.

*See*, *e.g.*, *Heater Control Panels*, 2:12-cv-00403, ECF No. 290-2 at pp. 4-5. This Minimum Payment Amount was added to encourage the filing of claims and to address the Court's prior concern that the number of claims already filed was fewer than hoped for. *See* Transcript of August 1, 2018 Fairness Hearing at 8:25-10:6, 2:12-md-2311, ECF No. 1937 (noting among other things that the low number of claims filed as of last summer "just didn't ring well with me"). The addition of a minimum payment amount serves this purpose and has been found by other courts to be "extremely important" in part because it "creat[es] a significant incentive for consumers to file proofs of claim." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 63 (D. Mass. 2005) (approving an allocation plan that ensured a minimum payment to consumers who filed a proof of claim). Moreover, courts have also recognized that a plan of allocation need not treat all class members equally. Courts have held that even where "[t]he manner in which the plan of allocation simplifies reality clearly works an injustice in his case," that injustice may be outweighed because "[a]dministrative convenience requires . . . that allocation plans incorporate some theoretically unjustified simplification." *In re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1336 (N.D.

Cal. 1997); *see also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 112 (E.D. Ill. 2011) (addressing objectors cross-subsidization concern and noting that "there is no rule that settlements benefit all class members equally" (quoting source omitted)).

Finally, Class Counsel notes that the Plan of Allocation is completely separate and apart from the settlements reached in this litigation. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 350 & n.45 (S.D.N.Y. 2005) (addressing objections to a plan of allocation as distinct from objections to a settlement). Any challenges to the Plan would not affect the approval of the settlements.

## Conclusion

For the foregoing reasons, Class Counsel respectfully request that the Court: (1) grant final approval of the Round 4 Settlements; (2) grant final certification of the Round 4 Settlement Classes for settlement purposes only; (3) confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 4 Settlements; and (4) approve the revised Plan of Allocation.

Dated: October 30, 2019                          Respectfully submitted,

                                                 */s/ Hollis Salzman*
                                                 Hollis Salzman
                                                 William V. Reiss
                                                 Noelle Feigenbaum
                                                 **ROBINS KAPLAN LLP**
                                                 601 Lexington Avenue, Suite 3400
                                                 New York, NY 10022
                                                 Telephone: (212) 980-7400
                                                 Facsimile: (212) 980-7499
                                                 hsalzman@robinskaplan.com
                                                 wreiss@robinskaplan.com
                                                 nfeigenbaum@robinskaplan.com

*/s/ Adam Zapala*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Steven M. Shepard
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, Floor 32
New York, New York 10019
Telephone: (212) 729-2010
sshepard@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Marc M. Seltzer*
Marc M. Seltzer